**SHOLES, Exr., Appellant,**

**v.**

**AGENCY RENT–A–CAR, INC., Appellee.**

[Cite as *Sholes v. Agency Rent–A–Car, Inc.* (1991), 76 Ohio App.3d 349.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59143.

Decided Nov. 25, 1991.

*Suzanne M. Nigro* and *Gordon S. Friedman,* for appellant.

*Paul R. Phillips* and *Peter T. Zackeroff,* for appellee.

NAHRA, Presiding Judge.

Robert Frank Sholes, Sr., executor of the estate of his son, Robert Frank Sholes, appeals from the trial court's grant of summary judgment to his son's former employer, Agency Rent–A–Car, Inc., appellee. For the reasons set forth below, we affirm.

Robert Frank Sholes began employment with Replacement Rent–A–Car, Inc. in July 1984 as a field representative in Atlanta, Georgia. Replacement was in the business of providing temporary substitute cars to customers of automobile dealers. Sholes was subsequently promoted to the position of regional trainer. In May 1987, he was transferred to Replacement's Dallas/Fort Worth region as a regional trainer.

In November 1987, Sholes tested positive for HIV. He was diagnosed with AIDS in May 1988.

On June 30, 1988, Agency Rent–A–Car, Inc. acquired Replacement Enterprises, Inc., d.b.a. Replacement Rent–A–Car, Inc. Since Agency did not have the position of regional trainer, Sholes was offered the position of office manager at one of Replacement's dealer locations. He was taken off salary and made an hourly employee. In late August, Sholes learned that his health and hospitalization insurance had been changed when he received the Agency employee handbook. Both his previous medical insurer and Agency informed him that he could not retain his previous insurance coverage, which had better benefits for the treatment of AIDS.

On October 1, 1988, Agency assigned James M. Tingley to administer the reorganization of the Replacement offices in the zone where Sholes was employed. Tingley discovered that Sholes had AIDS on October 4 or 5 from district manager Ronnie Herring.

On October 10, Sholes called Tingley regarding his medical benefits and informed Tingley that he was about to be hospitalized for chemotherapy. Although the date is disputed, Tingley terminated Sholes over the telephone while Sholes was hospitalized sometime before October 17. Tingley asserted that Sholes requested to be laid off. Sholes stated that he was told he was

being laid off, but that he wanted to keep his job and was in effect fired because he had AIDS. Agency claimed that the office was being closed, although it was not closed until the end of October. Sholes subsequently collected unemployment compensation.

On October 19, 1988, Sholes filed a charge of discriminatory discharge with the Texas Commission on Human Rights. In a letter dated November 7, 1988, the TCHR notified Sholes that it was issuing him a "Notice of Right to File a Civil Action." Sholes received the letter and notice in November or December 1988. In January 1989, Sholes relocated to Cleveland to seek better medical care. On February 22, 1988, Sholes filed a charge of discriminatory discharge with the Ohio Civil Rights Commission. In a letter dated April 12, 1989, the Ohio Civil Rights Commission notified Sholes that it was dismissing his complaint due to lack of jurisdiction. It noted that Sholes' employment was in Texas, that he filed a charge in Texas, and that he failed to act upon the right-to-sue notice within the regulatory time frame. Sholes filed a petition for judicial review of the commission's decision on May 29, 1989 in the Cuyahoga County Common Pleas Court.

Meanwhile, Sholes filed a complaint against Agency on April 26, 1989, asserting claims of breach of an implied contract, promissory estoppel, emotional distress, fraud, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing. On May 15, he filed an amended complaint adding a claim for discriminatory discharge. On May 25, he moved to have his separate Civil Rights Commission appeal reassigned to the same judge who was assigned to his case against Agency. The motion was denied.

On August 31, Sholes died. His father was substituted as executor.

Agency filed a notice of its intent to rely on Texas law at the end of September. Sholes' executor filed a motion for partial summary judgment on the choice-of-law issue, claiming that Ohio law applied.

Agency filed a motion for summary judgment. It claimed that Texas law applied, that Sholes' employment was at will, that the discrimination claim was time-barred, and that Sholes could not bring separate tort actions arising out of an employment relationship according to Texas law. Sholes' executor opposed the motion, and the trial court granted summary judgment for Agency. The trial court subsequently adopted Agency's proposed findings of fact and conclusions of law, and denied partial summary judgment for Sholes' executor. Sholes' executor brought this timely appeal.

I

Appellant's first assignment of error reads as follows:

"The lower court erred when it denied appellant's motion for partial summary judgment which sought application of Ohio law, and instead, ordered that Texas law applies to all causes of action."

In *Morgan v. Biro Mfg. Co.* (1984), 15 Ohio St.3d 339, 15 OBR 463, 474 N.E.2d 286, the court set forth guidelines for the choice of law in tort actions. The court noted that the substantive law of the place where the injury occurred ("lex loci delicti") used to be applied automatically. It stated that this rule is still viable, but that a more flexible approach should be used. It outlined that approach as follows at 341–342, 15 OBR at 465–470, 474 N.E.2d at 288–289:

" * * * We hereby adopt the theory stated in the Restatement of the Law of Conflicts, as it is more reflective of our past decisions and also provides sufficient guidelines for future litigation.

"When confronted with a choice-of-law issue in a tort action under the Restatement of the Law of Conflicts view, analysis must begin with Section 146. Pursuant to this section, a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit. To determine the state with the most significant relationship, a court must then proceed to consider the general principles set forth in Section 145. The factors within this section are: (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 which the court may deem relevant to the litigation. All of these factors are to be evaluated according to their relative importance to the case." (Footnotes omitted.)

See, also, *Medley v. J.H. Williams Indus. Prod., Inc.* (Sept. 1, 1988), Cuyahoga App. No. 54257, unreported (this court determined that New York law applied to a wrongful discharge case brought by an Ohio resident who relocated to New York state for the employment at issue, and moved back to Ohio after his discharge); and *Gries Sports Ent. v. Modell* (1984), 15 Ohio St.3d 284, 15 OBR 417, 473 N.E.2d 807, certiorari denied (1984), 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (contacts to be considered to determine choice of law in contract actions are the place of contracting, the place of negotiations, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation and place of business of the parties).

▮ In this case, the place of the alleged contracting, negotiation, and performance is Texas; the place of the alleged injury, conduct causing the injury, and relationship of the parties is Texas. Sholes moved to Ohio after

his discharge, and Agency's corporate headquarters is located in Ohio. Since the relationship and conduct at issue were all in Texas, we find that Ohio's relationship to the lawsuit is not more important than Texas'. Accordingly, the place of the alleged injury and contracting should control. The trial court did not err in finding that Texas law should apply.

■ Appellant also claims that appellee did not give reasonable notice of its intent to rely on Texas law pursuant to Civ.R. 44.1(A)(3). The rule calls for notice to be given in a "pleading or other reasonable notice." In *Klouda v. First Fed. Savings Bank* (Aug. 18, 1988), Cuyahoga App. No. 54240, unreported, 1988 WL 88345, this court reversed a trial court's refusal to take judicial notice of municipal ordinances where the party gave notice of its intention to rely on the ordinances in a summary judgment motion. See, also, *Bowman v. Koch Transfer Co.* (C.A.6, 1988), 862 F.2d 1257, where the court stated that the parties are charged with knowledge of the choice-of-law issues, and that the trial court did not err in addressing the issue on the second day of trial.

In this case, the choice-of-law issue should also have been apparent to the parties. Appellee filed its notice prior to filing for summary judgment and in advance of the scheduled trial date. Appellant's first assignment of error is without merit.

## II

Appellant's second assignment of error reads as follows:

"The lower court erred in refusing jurisdiction of appellant's handicap discrimination claim.

"A. The lower court erred in failing to rule on appellant's handicap claim pursuant to Ohio Revised Code Section 4112.99.

"B. The lower court improperly based its denial of jurisdiction upon only a portion of the Texas statute where a reading of the statute as a whole clearly reveals appellant timely presented a claim of handicap discrimination."

Sholes filed a charge of discriminatory discharge with the Texas Commission on Human Rights, but did not bring suit in Texas within sixty days of receipt of the commission's right-to-sue letter.

Tex.Rev.Civ.Stat.Ann. (Vernon 1987), Article 5221k, Section 7.01(a) states in part as follows:

"Sec. 7.01. (a) * * * If the complaint filed with the commission pursuant to Section 6.01 of this Act is dismissed by the commission, or if within 180 days after the date of filing of the complaint the commission has not filed a civil action under this section or has not successfully negotiated a conciliation agreement between the complainant and respondent, the commission shall so

notify the complainant in writing by certified mail. Within 60 days after the date of receipt of the notice, a civil action may be brought by the complainant against the respondent named in the charge. After timely application, the court may in its discretion permit the commission to intervene in any civil action filed under this subsection on certification that the case is of general public importance and if the commission has, before commencement of the civil action by the complainant, issued a determination of reasonable cause to believe that the Act has been violated. In no event may any action be brought pursuant to this article more than one year after the date of filing of the complaint to which the action relates."

Appellant argues that, according to this section, Sholes had one year from the date of filing his original discrimination complaint with the TCHR to file a civil lawsuit.

In ascertaining legislative intent, statutes must be read as a whole. See, *e.g.*, *Morrison v. Chan* (Tex.1985), 699 S.W.2d 205; *State v. Parks* (1983), 13 Ohio App.3d 85, 13 OBR 100, 468 N.E.2d 104. Furthermore, where a lawsuit is based on a statutory cause of action, the statutory provisions are mandatory and exclusive and must be followed or the action is not maintainable because of a lack of jurisdiction. *Green v. Aluminum Co. of Am.* (Tex.App.1988), 760 S.W.2d 378.

In *Eckerdt v. Frostex Foods, Inc.* (Tex.App.1990), 802 S.W.2d 70, the court applied the same statute and held that a civil lawsuit could not be brought within sixty days after receipt of a right-to-sue letter, where a year had already passed since the filing of the original complaint with the commission. The court stated that the commission's failure to send timely notice did not toll the running of the one-year period, and that it could not "deviate from the plain meaning of the statute." *Id.* at 71.

Accordingly, the statute must be interpreted to grant up to sixty days to file a civil lawsuit after receipt of a right-to-sue letter, except where the one-year period after filing of the original complaint ends prior to the end of that sixty days. In that event, the party does not have sixty days to file a civil lawsuit, but must do so prior to the end of the one-year period, even if no right-to-sue letter has been received. The one-year time limit does not give a party more than sixty days from receipt of the letter to file.

In this case, appellant did not bring his lawsuit within sixty days of receipt of the right-to-sue letter. The letter was received in November or December 1988, and suit was filed in Ohio in April 1989. Appellant's handicap discrimination claim is therefore time-barred, and his second assignment of error is without merit.

## III

Appellant's third assignment of error reads as follows:

"The court below erroneously concluded that there are no applicable exceptions to the at-will doctrine under Texas law.

"A. The court below erred in failing to apply Ohio law to appellant's implied contract of employment claim."

We have already rejected appellant's argument that Ohio law should apply. See subsection I, *supra*. As for employment at will, "Texas courts have traditionally followed the employment-at-will rule which provides that, absent any existing statutory provisions, public policy exceptions, or specific contract terms or express agreements to the contrary, when an employment contract provides for an indefinite term of service, either party may put an end to it at will, with or without cause." (Citations omitted.) *Hicks v. Baylor Univ. Med. Ctr.* (Tex.App.1990), 789 S.W.2d 299, 301.

The Texas Supreme Court recently explained that it had thus far recognized only two public-policy exceptions to the at-will rule. One is for an employee discharged "'for the sole reason that the employee refused to perform an illegal act,'" *Winters v. Houston Chronicle Publishing Co.* (Tex.1990), 795 S.W.2d 723, 724, quoting *Sabine Pilot Service, Inc. v. Hauck* (Tex.1985), 687 S.W.2d 733. See, also, *Hancock v. Express One Internatl., Inc.* (Tex.App. 1990), 800 S.W.2d 634 (the court narrowly construed the *Sabine* exception and refused to apply it to an employee discharged for refusal to violate a federal regulation carrying only civil, and not criminal, penalties).

The Texas Supreme Court also allowed an exception to the at-will rule for employees discharged because the employer wanted to avoid contributing pension benefits, but its decision was reversed by the United States Supreme Court. See *Ingersoll–Rand Co. v. McClendon* (1990), 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474. The United States Supreme Court held that the common-law wrongful discharge claim was preempted by ERISA. Neither of these public policy exceptions apply to this case.

Appellant claims that Sholes had an implied contract with appellee that modified the at-will employment relationship. The at-will relationship can be modified by written or oral agreement. See, *e.g., Johnson v. Ford Motor Co.* (Tex.App.1985), 690 S.W.2d 90, 93, and *Kelley v. Apache Products, Inc.* (Tex.App.1986), 709 S.W.2d 772, 774.[1] However, "Texas courts have consis-

---

1. Although Texas courts have applied the Statute of Frauds as a defense to oral employment contracts extending beyond one year, they have also refused to allow the defense where the contract or contract modification is performable within one year. Compare *Schroeder v.*

tently held that general company manuals or handbooks, if accompanied by an express agreement or written representation regarding procedures for discharge of employees, do *not* constitute written employment agreements immune from the at-will rule." (Citations omitted; emphasis in original.) *Hicks, supra,* 789 S.W.2d at 302. See, also, *Berry v. Doctor's Health Facilities* (Tex.App.1986), 715 S.W.2d 60 (court refused to imply an employment contract based on an employment handbook which included a disclaimer that no contract could be implied).

Appellant's claim is based in part on written representations. The written representations are found in Agency's employment handbook, and in Sholes' change status form. Appellant claims that appellee was obligated to terminate employees only for just cause by virtue of the handbook, and that his change status form indicated that his employment was full-time and salaried.

The Agency handbook explicitly states on page 11 that the employment relationship is at will, and that any promises to the contrary are not binding on appellee unless they are in writing and signed by the president. The handbook does set forth various types of misconduct which justify termination, but does not include procedures for discharge or limits on Agency's right to terminate employees at will. The change status form indicates only that Sholes' employment was full-time and salaried.

Therefore, no contract can be implied from these documents. The handbook terms clearly indicate that Agency intended to maintain the at-will relationship, and did not obligate itself to discharge employees only for just cause. Alternatively, assuming that these documents did create a contract relationship, Sholes' discharge did not breach the contract. Neither the handbook nor the change notice provides for a definite term of employment or specific discharge procedures that were violated.

Appellant also bases his claim on oral representations. Sholes asserted that he had continually received good performance evaluations and promotions. Sholes stated that Michael Parent told him that his demotion was only temporary, that his salary would soon be increased to Agency levels, and that he would have the opportunity to continue to advance in the company. Appellant neither asserts nor proves that Sholes received an offer of employment for a term, or of conditions for discharge, which he accepted.

*Texas Iron Works, Inc.* (Tex.1991), 813 S.W.2d 483, *Benoit v. Polysar Gulf Coast, Inc.* (Tex.App.1987), 728 S.W.2d 403, and *Molder v. Southwestern Bell Telephone Co.* (Tex.App. 1983), 665 S.W.2d 175, with *Johnson* and *Kelley, supra.*

In *Vallone v. Agip Petroleum Co.* (Tex.App.1986), 705 S.W.2d 757, the court held that an employee failed to state a cause of action for breach of an employment agreement based on an employee handbook and a good performance review. The court stated that the employee made "no allegation that the appellee's termination policy was bargained for in a mutual agreement." The court noted that the employee believed that she had a job for so long as her work was satisfactory, but did not have a valid cause of action without allegations of an actual agreement with her employer.

Likewise, in this case, Sholes apparently believed he had continued employment because his evaluations were good, because he received promotions, because he survived the initial terminations caused by the corporate merger, because Parent told him that his situation would improve, and because he had not engaged in misconduct. Appellant fails to allege or prove that a mutual agreement was reached which limited Agency's ability to terminate Sholes at will, or to allege or prove that other recognized exceptions to the at-will rule apply. Therefore, appellee was entitled to discharge Sholes. Appellant's third assignment of error is without merit.

## IV.

Appellant's fourth assignment of error reads as follows:

"The lower court erred in refusing to recognize distinct and independent state claims which arise even if appellant was an employee-at-will.

"A. The lower court failed to rule that Texas recognizes separate causes of action despite an at-will situation.

"B. The court below failed to apply Ohio law to appellant's separate tort law claims."

We addressed appellant's claim of error regarding the choice-of-law issue in Subsection I, *supra.*

Sholes' complaint included claims for promissory estoppel, negligent and intentional infliction of emotional distress, fraud, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing, in addition to the implied contract claim, addressed *supra.*

Assuming *arguendo* that appellant's claims for promissory estoppel, fraud and negligent misrepresentation can be brought independently where they arise out of an at-will employment relationship, these claims all fail because appellant did not establish factual issues regarding detrimental reliance in response to appellee's summary judgment motion. All three

causes of action require detrimental reliance. See, *e.g., English v. Fischer* (Tex.1983), 660 S.W.2d 521, and *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.* (Tex.App.1986), 715 S.W.2d 408.

In *Schroeder v. Texas Iron Works, Inc.* (Tex.App.1989), 769 S.W.2d 625, affirmed (Tex.1991), 813 S.W.2d 483, a promissory estoppel claim was rejected where an employee built an expensive retirement home based on promises of job security, because the employer did not induce the employee to build the home.

In this case, appellant claimed that Sholes was deceived by Mike Parent into believing that his demotion and salary decrease were only temporary, and that he was thereby induced to accept the demotion. Although appellant asserted that losing the job caused Sholes detriment, he neither pleaded nor proved how being induced to stay on the job caused Sholes detriment. Compare to *Roberts v. Geosource Drilling Serv., Inc.* (Tex.App.1988), 757 S.W.2d 48 (detrimental reliance established where plaintiff signed an employment contract, quit his then-current employment, and the new employer refused to hire him).

Turning to appellant's emotional distress claims, we note that some Texas courts have categorically refused to allow separate tort claims which arise out of an at-will employment relationship. See, *e.g., Molder v. S.W. Bell Tel. Co.* (Tex.App.1983), 665 S.W.2d 175; *Berry, supra;* and *Fiorenza v. First City Bank–Central* (E.D.Tex.1988), 710 F.Supp. 1104. Separate tort claims have been allowed in wrongful discharge cases where they do not arise solely from the discharge. See *K.W.S. Mfg. Co. v. McMahon* (Tex.App.1978), 565 S.W.2d 368 (fraud claim allowed in wrongful discharge case, according to *Berry, supra,* 715 S.W.2d at 62, because "the wrongful discharge represented only the finale of a course of fraudulent conduct whereby the plaintiff was induced to contribute labor and materials to the corporation in exchange for stock"); and *Currey v. Lone Star Steel Co.* (Tex.App.1984), 676 S.W.2d 205 (summary judgment as to claims of unconscionable conduct reversed where the conduct was separate from the discharge).

In *Abston v. Levi Strauss & Co.* (E.D.Tex.1987), 684 F.Supp. 152, the court allowed an emotional distress claim to be brought in an employment case. The court did not describe the factual circumstances and did not indicate whether separate tortious conduct was involved. It rejected an intentional infliction of emotional distress claim due to a lack of outrageous conduct by the employer, but found that the negligent infliction of emotional distress claim should go to the jury. The court stated that "Texas law recognizes the

independent tort of intentional or negligent infliction of emotional distress. *Tidelands Auto Club v. Walters,* 699 S.W.2d 939 (Tex.Civ.App.—Beaumont 1985, writ ref. n.r.e.); *City of Austin v. Davis,* 693 S.W.2d 31 (Tex.Civ.App.—Austin 1985, writ ref. n.r.e.)." *Abston, supra,* 684 F.Supp. at 157. We hesitate to rely on *Abston* because of the absence of facts, and because the cases relied on by the *Abston* court are not employment cases. The emotional distress torts in the cited cases are "independent" in the sense that no physical injury is alleged. The court cited no other authority for allowing emotional distress claims arising out of an employer's termination of an at-will employee.

Accordingly, we conclude that under Texas law, employees do not have separate emotional distress claims arising solely out of discharge where there is no tortious conduct by the employer other than the discharge itself.

Appellant's claims for the negligent and intentional infliction of emotional distress are based on appellee's discharge of Sholes, its resistance to expeditiously respond to Sholes' requests for information regarding his benefits, appellee's claim that Sholes was laid off, not terminated, and appellee's failure to conform to its own policies. According to appellant, the primary objectionable conduct is the appellee's "outrageous and malicious failure to allow [Sholes] to return to work." Appellant further explains that appellee's conduct was outrageous not because of anything that appellee did, but because Sholes had AIDS.

Appellee's alleged failings outside of the discharge do not rise to the level of tortious conduct. Since appellee had the right to terminate Sholes, and the alleged emotional distress arose from the termination, summary judgment was properly granted on appellant's emotional distress claims.

Finally, appellant also included a claim for breach of an implied covenant of good faith and fair dealing. In *English v. Fischer, supra,* the Texas Supreme Court held that a covenant of good faith and fair dealing is not implied in contracts as a general rule. Although the same court has found that workers' compensation insurance carriers owe a duty of good faith and fair dealing to claimants, see, *e.g., Aranda v. Ins. Co. of N. Am.* (Tex.1988), 748 S.W.2d 210, it has also held that there is no exception to the at-will employment doctrine for the implied covenant of good faith and fair dealing. *Lumpkin v. H & C Communications, Inc.* (Tex.App.1988), 755 S.W.2d 538. See, also, *Rodriguez v. Benson Properties, Inc.* (W.D.Tex.1989), 716 F.Supp.

275. Therefore, the trial court correctly refused to imply a covenant of good faith and fair dealing in this case.

Since all of appellant's common-law claims were properly rejected by the trial court, appellant's fourth assignment of error is without merit.

## V

Appellant's fifth assignment of error reads as follows:

"The lower court's order granting summary judgment for appellee was erroneous where extensive evidence creating material issues of fact was not viewed in favor of appellant, the non-moving party."

In *Rosas v. Buddie's Food Store* (Tex.1975), 518 S.W.2d 534, 537, the Texas Supreme Court stated that a defendant's summary judgment motion must be affirmed where the defendant has negated at least one element of each of the plaintiff's causes of action as a matter of law. The plaintiff then has the burden of submitting evidence that raises factual issues as to the elements negated. *Goldberg v. U.S. Shoe Corp.* (Tex.App.1989), 775 S.W.2d 751, 752; see, also, *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. We have already concluded that appellant failed to raise factual issues as to the elements of the claims negated by appellee, and that appellee is entitled to judgment as a matter of law. The trial court did not err in granting summary judgment. Appellant's fifth assignment of error is without merit.

*Judgment affirmed.*

PATTON, J., concurs.

BLACKMON, J., concurs in judgment only.