OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-Appellant, Steven Creaturo, Executor of the Estate of Anna Cable, appeals the decision of the Columbiana County Court of Common Pleas that granted summary judgment to Defendants-Appellees, American Express Financial Advisors, Inc., and Thomas Titus. Creaturo raises three different issues on appeal. We only need to address two of those issues to resolve this appeal.
 {¶ 2} First, Creaturo takes issue with the trial court's conclusion that his tort claims are barred by the statute of limitations. But law of the case does not apply in this situation, Creaturo's tort claims are governed by a four year statute of limitations, and there is no evidence supporting a reason to toll the running of that statute of limitations. Creaturo filed his original claim more than four years after his tort causes of action accrued. Accordingly, the trial court properly granted summary judgment to Appellees on Creaturo's tort claims.
 {¶ 3} Second, Creaturo contends that the trial court erred when granting summary judgment on his breach of contract claim. One of the contractual terms was that the investments were not replacement investments. Creaturo contends AEFA breached the contract by funding these investments with proceeds from other investments. But it was Cable, not AEFA who funded the investments. It was her actions, not AEFA's, which could be interpreted as a breach of contract. Accordingly, the trial court properly granted summary judgment on this issue as well.
 {¶ 4} For these reasons, the trial court properly granted summary judgment to Appellees on all of Creaturo's claims against them. The trial court's decision is affirmed.
 Facts {¶ 5} In 1988, Cable divorced her husband and, as part of the divorce settlement, received a portfolio of investments amounting to a substantial sum of money. Some of those investments were issues by AEFA's predecessor in interest, IDS Life Insurance Company.[1] After her divorce, Cable met with Jeffery Zimmerman, an AEFA agent, to review her portfolio. She and Zimmerman concluded that she needed a life insurance policy and submitted an application for one to AEFA. Subsequently, Cable requested that the application be withdrawn and her initial premium returned.
 {¶ 6} After his initial consultation with Cable after her divorce, Zimmerman left his affiliation with AEFA. Her account was than assigned to Edward Duko. Scott Duko, Edward's son, was also an AEFA agent and helped handle Cable's account. The Dukos facilitated Cable's purchase of many AEFA investment products. Allegedly, Cable purchased some of these products with funds she received from other investment products. On each of the applications she submitted to AEFA, which became part of the investment contract, Cable and her agent verified that the product she was purchasing was not a replacement product.
 {¶ 7} While investing with AEFA, Cable gave substantial monetary gifts to family members. This caused problems with her investments because Cable generally bought long-term investments. But when she withdrew money to make the monetary gifts to her family members, she incurred penalties. She would then incur additional costs when reinvesting the remaining money into another long-term investment.
 {¶ 8} AEFA terminated its affiliation with Scott in July 1990. According to his contract, Scott was a "captive agent" of AEFA. In other words, he was not allowed to sell any other company's products. AEFA alleged that he encouraged someone to purchase a competitor's product. Scott then became an independent agent, selling the investment products of various insurance companies.
 {¶ 9} Edward Duko retired from AEFA in July 1991. AEFA alleged that he also encouraged someone to purchase a competitor's products. He continued selling investment products as an independent agent on a part-time basis after that date.
 {¶ 10} Cable continued her relationship with the Dukos after they parted ways with AEFA because of the trust she had developed in them. They continued to sell various investment products from various companies to her until she suffered serious strokes in 1995 and passed away in 1996.
 {¶ 11} Steven Creaturo, Cable's son, was appointed as the Executor of Cable's estate. After an investigation into the state of Cable's investments, Creaturo and his sister, Paula Susi, suspected that the Dukos had churned their mother through investments. An agent like either of the Dukos churns a client when they induce the client to invest in a series of contracts designed to increase the agent's commissions and is not in the best interests of the client.
 {¶ 12} In February 1998, Creaturo filed an action in the Mahoning County Court of Common Pleas against AEFA, Titus, the Dukos' supervisor during their affiliation with AEFA, the Dukos, and various other insurance companies. Creaturo subsequently dismissed that case voluntarily. Within a year, he filed a complaint in the Columbiana County Court of Common Pleas. This complaint also named AEFA, Titus, the Dukos, and various other insurance companies as defendants. It alleged seven different causes of action: breach of contract, breach of fiduciary duties, breach of good faith and fair dealing, negligent supervision, fraud, deceit by concealment, and unfair trade practices.
 {¶ 13} At an early stage in the litigation, one of the other insurance companies filed a motion to dismiss for failure to state a claim. The insurance company argued that the complaint failed to state a claim for breach of contract, that the Dukos were never its employees, and that many of Creaturo's claims were barred by the statute of limitations. The trial court denied that motion. Subsequent to this decision, the trial judge recused himself and the case was assigned to a different trial judge.
 {¶ 14} After discovery, AEFA and Titus filed a joint motion for summary judgment. Creaturo responded to the motion and attached a voluminous affidavit containing many different exhibits. AEFA and Titus moved to strike some of those exhibits. Specifically, AEFA and Titus moved to strike some exhibits which Creaturo did not cite to in his brief opposing the motion for summary judgment and the reports of Creaturo's three expert witnesses. AEFA and Titus claimed that Creaturo did not present a sufficient evidentiary basis to allow those expert reports.
 {¶ 15} The trial court entered judgment in December 2003. It first addressed motions not relevant to this appeal. It then granted the motion to strike Creaturo's exhibits. Finally, it granted the joint motion for summary judgment. It concluded that Creaturo's tort claims were barred by the statute of limitations, that AEFA did not breach its contract with Cable, and that the Dukos were independent contractors, rather than employees of AEFA.
 Standard of Review {¶ 16} In this appeal, Creaturo claims the trial court erred in granting summary judgment to AEFA and Titus. When reviewing a trial court's decision to grant summary judgment, this court applies the same standard as the trial court and, therefore, engages in a de novo review.Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-0186.
 {¶ 17} In a motion for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt, 75 Ohio St.3d 280, 296, 1996-Ohio-0107. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293.
 Statute of Limitations {¶ 18} In his first assignment of error, Creaturo argues:
 {¶ 19} "The trial court erred in granting summary judgment in favor of Defendant on statute of limitations grounds by failing to find that tolling created a material issue of fact where substantial evidence that [sic] and its agents had a confidential relationship with decedent and misrepresented, concealed and failed to disclose material information to plaintiff's decedent."
 {¶ 20} In this assignment of error, Creaturo first argues that the law of the case doctrine should apply in this case and that a previous judge's ruling on this issue in a motion to dismiss filed by another defendant should preclude the trial court from granting summary judgment on this issue now. Creaturo further contends that many of his claims are subject to a fifteen year statute of limitations. Creaturo then argues that all of the statutes of limitations which apply in this case were tolled by Appellees' fraudulent concealment of the claims by not disclosing certain aspects of the transactions to Mrs. Cable. Finally, he argues that all of his claims are saved by Ohio's savings statute.
 Law of the Case {¶ 21} Creaturo argues that the trial court erred when granting summary judgment to Appellees since the issues they raised in their motion for summary judgment were rejected by a prior judge in another defendant's Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. According to Creaturo, the common law doctrine of law of the case should apply and prevent this trial judge from disregarding the conclusions of the previous trial judge.
 {¶ 22} In this case, USG Annuity Life Company, one of Appellees' codefendants, filed a four-pronged Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. It first argued that Creaturo failed to state a claim for breach of contract because the application containing incorrect information was not part of Mrs. Cable's contract with it and because that claim is barred by the statute of limitations. Second, USG argued that it was not liable for the Dukos' wrongdoing since they were not its agents. Third, USG claimed that Creaturo's various tort claims were barred by the statute of limitations. Finally, USG argued that Creaturo's claim for a violation of R.C. Chapter 3901 must be dismissed because that Chapter does not create a private cause of action, USG did not violate that Chapter, and that any claim under that Chapter would be barred by the statute of limitations.
 {¶ 23} The trial court denied USG's motion in March 2002. It concluded that the application was a part of the contract pursuant to R.C. 3911.04
and subsequent Ohio Supreme Court caselaw. It further concluded that the claim fell within the fifteen year statute of limitations for breach of contract. It then concluded that the complaint sufficiently alleged that the Dukos were USG's agent. Finally, the trial court concluded that Creaturo set forth sufficient facts in his complaint to toll the statute of limitations on the various tort claims. Many of the issues the trial court addressed in its March 2002 judgment entry are asserted in Appellees' motion for summary judgment.
 {¶ 24} The law of the case doctrine provides that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3. This doctrine is a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. Id. And the doctrine does not apply when subsequent proceedings involve different legal issues or different evidentiary records. Johnson v.Morris (1995), 108 Ohio App.3d 343, 349.
 {¶ 25} Courts have extended the doctrine to encompass a lower court's adherence to its own prior rulings or to the rulings of another judge or court in the same case. Poluse v. Youngstown (1999), 135 Ohio App.3d 720,725. But trial courts normally only give preclusive effect to their prior rulings if those rulings could have been appealed and were not.Clymer v. Clymer (Sept. 26, 1995), 10th Dist. No. 95APF02-239, citing Inre Doe Stripper Well Exemption Litig. (D.Kan. 1993), 821 F.Supp. 1432,1434. Indeed, Civ.R. 54(B) states that any order which is not a final, appealable order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Pitts v. Ohio Dept. of Transp. (1981), 67 Ohio St.2d 378,380, footnote 1. Thus, the law of the case doctrine does not mean that a trial court may not reconsider its prior rulings. Id.; Poluse at 725.
 {¶ 26} This doctrine does not apply to Appellees' motion for summary judgment for two main reasons. First, USG's motion to dismiss and Appellees motion for summary judgment involve different legal issues. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." Stateex rel. Hanson v. Guernsey Cty. Bd. of Commrs., 65 Ohio St.3d 545, 548, 1992-Ohio-0073. "[W]hen a party files a motion to dismiss for failure to state a claim, all the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party." Byrd v. Faber (1991), 57 Ohio St.3d 56, 60. A trial court may only dismiss for failure to state a claim upon which relief can be granted if it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." O'Brienv. Univ. Community Tenants Union (1975), 42 Ohio St.2d 242, syllabus. In resolving a Civ.R. 12(B)(6) motion to dismiss, the trial court must confine its review to the averments contained in the complaint. State exrel. Alford v. Willoughby (1979), 58 Ohio St.2d 221, 223.
 {¶ 27} This standard is very different than the one employed when ruling on a motion for summary judgment. For instance, a motion to dismiss under Civ.R. 12(B)(6) tests the sufficiency of the pleadings while a motion for summary judgment tests the sufficiency of the evidence supporting those pleadings. As the Ohio Supreme Court has stated, a party opposing a motion for summary judgment must specify the facts demonstrating a genuine issue of material fact and may not rest on mere allegations or denials in the pleadings. Dresher at 293. The differences between the two are distinct and preclude the application of the law of the case doctrine here.
 {¶ 28} Second, the trial court's decision to deny USG's motion to dismiss was an interlocutory order. See Sumskis v. Medina County Bd. ofMental Retardation and Development (Feb. 2, 2000), 9th Dist. Nos. 2886-M, 2887-M ("An order that denies a motion to dismiss for failure to state a claim upon which relief can be granted is not a final order.") Thus, the trial court could have reconsidered its decision at any time pursuant to Civ.R. 54(B). The trial court's prior ruling does not have any preclusive effect on its decision regarding Appellees' motion for summary judgment.
 Applicable Statute of Limitations {¶ 29} Creaturo has asserted a variety of claims which are subject to varied statutes of limitations. Appellees argue that many of these claims were not brought within their applicable statutes of limitations. Before we can determine whether the claims are time-barred, we must first determine the applicable statute of limitations for each claim.
 {¶ 30} Creaturo has stated seven different claims against Appellees: 1) breach of contract; 2) breach of fiduciary duties; 3) breach of the duty of good faith and fair dealing; 4) negligent supervision; 5) fraud; 6) deceit by concealment; and, 7) unfair trade practices. Creaturo concedes that the last four claims are all subject to a four year statute of limitations. But Creaturo argues that a fifteen year statute of limitations applies to the first three claims. Appellees argue that the fifteen year statute of limitations only applies to the claim for a breach of contract.
 {¶ 31} "[I]n determining which limitation period will apply, courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial." Hambletonv. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183. What matters is "the essential character" of the plaintiff's claims. Doe v. First UnitedMethodist Church, 68 Ohio St.3d 531, 536, 1994-Ohio-0531. To hold otherwise would allow a clever attorney to circumvent the purpose behind a statute of limitations by transforming one claim into another. See Lovev. Port Clinton (1988), 37 Ohio St.3d 98, 100.
 {¶ 32} R.C. 2305.06 provides a fifteen year statute of limitations on actions for breach of a written contract. "Except as provided in sections126.301 and 1302.98 of the Revised Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause thereof accrued." Id. In contrast, Creaturo's tort claims are governed by R.C. 2305.09, which provides a general limitations period of four years for tort actions not specifically covered by other sections of the Ohio Revised Code. InvestorsREIT One v. Jacobs (1989), 46 Ohio St.3d 176, 179.
 {¶ 33} In support of his claim that his breach of fiduciary duty and duty of good faith and fair dealing are subject to the fifteen year statute of limitations, Creaturo cites Cope v. Metropolitan Lifeinsurance Co., 82 Ohio St.3d 426, 1998-Ohio-0405, Jost v. Burr (1990),69 Ohio App.3d 354, and Kreidler v. Western-Southern Life AssuranceCo. (Apr. 14, 1999), Erie County Court of Common Pleas No. 95-CV-157. Appellees argue that Creaturo mischaracterizes the holdings in those cases. Appellees are correct.
 {¶ 34} In Cope, the Ohio Supreme Court was asked to determine "whether the trial court abused its discretion in denying class certification on the basis that appellants failed to satisfy Civ.R. 23(B)(3)'s requirement of predominance and superiority." Id. at 429. In doing so, it made comments which Creaturo uses to argue that Appellees actions were a breach of contract. But nothing in Cope addresses whether Creaturo's claims for breach of fiduciary duty and duty of good faith and fair dealing are governed by the fifteen year statute of limitations governing contracts.
 {¶ 35} In Jost, the Ninth District was asked whether a claim for breach of fiduciary duties was brought within the applicable statute of limitations. The trial court dismissed the action for failure to state a claim, citing both R.C. 2305.06 and 2305.09. The appellate court affirmed.
 {¶ 36} "This issue is also resolved in the manner in which the trial court adopted the statute of limitations. The Josts claim that the breach of fiduciary duty occurred upon the execution of the amended lease dated October 31, 1969. Of the two statutes cited by the trial court, R.C.2305.06 grants appellants the longer statute of limitations of fifteen years. Therefore, the statute of limitations expired on October 31, 1984 and precludes Count II of appellants' complaint filed in 1988." Id. at 360-361.
 {¶ 37} As can be seen, the court in Jost did not conclude that R.C.2305.06 applies to the claim for breach of fiduciary duties. Rather, it found that the action fell outside the statute of limitations even if that statute applied to that type of claim. As the trial court stated, that court "merely gave full deference to the Appellants in that case without deciding that the cited statute was the appropriate one to be applied."
 {¶ 38} The final case Creaturo cites is an unreported case from the Erie County Court of Common Pleas. In that case, the trial court cited toJost and specifically held that a breach of fiduciary duty claim is subject to a fifteen year statute of limitations. That case is, of course not binding. Furthermore, its citation to Jost is incorrect.
 {¶ 39} The cases Creaturo cites do not support his argument. But this fact does not mean that Appellees are correct. Both a fiduciary duty and a duty of good faith and fair dealing are common law duties. MotoristsMut. Ins. Co. v. Said, 63 Ohio St.3d 690, 704, 1992-Ohio-0094; Cruz v.South Dayton Urological Associates, Inc. (1997), 121 Ohio App.3d 655,663; Sholes v. Agency Rent-A-Car, Inc. (1991), 76 Ohio App.3d 349,361-362. Nevertheless, these duties may also be memorialized in a written contract. If this is the case, then the breach of those duties will also be a breach of the contract. See Crosby v. Beam (1992), 83 Ohio App. 501, 509.
 {¶ 40} In this case, Creaturo does not allege that any fiduciary duties arose from the contract. Instead, he claims that Appellees "assumed fiduciary duties to Mrs. Cable by agreeing to advise Mrs. Cable on and/or to procure and provide Mrs. Cable with new insurance, investments and/or annuities with reasonable care, skill and diligence and in effecting aid insurance, investments and/or annuities and acting to transfer funds from preexisting policies to finance new policies, thereby exerting control over Mrs. Cable's funds and in making representations to Mrs. Cable that said transactions, all of which were previously outlined, were for the benefit of Mrs. Cable." Furthermore, none of the at least twenty-two contracts involving Appellees impose any fiduciary duties upon the defendants. At the very least, Creaturo has been unable to point to any specific provision in any of those contracts imposing a fiduciary duty upon Appellees. Thus, Creaturo's argument that his claim for breach of fiduciary duties falls within R.C. 2305.06 is meritless.
 {¶ 41} Creaturo argues that Appellees' duty of good faith and fair dealing arises from two sources. First, he claims Appellees have a duty of good faith and fair dealing because they are "an insurer or agent doing business in Ohio." He then alleges that Appellees have this duty "[a]s part of their obligations under the life insurance policies, annuities and investment agreements that they issue" because it is an "implicit term of the contractual obligations to the insureds and other contracting parties and in their capacity as fiduciary." Thus, Creaturo again failed to allege that the duty was part of the written contract. Our independent review of the written contracts between Cable and Appellees reveal that they do not expressly impose that duty upon Appellees. Thus, Creaturo's argument that his claim for breach of the duty of good faith and fair dealing falls within R.C. 2305.06 is also meritless.
 {¶ 42} In conclusion, the only claim that Creaturo has brought which falls within R.C. 2305.06's fifteen year statute of limitations is his claim for breach of contract. All of his other claims are governed by R.C. 2305.09's four year statute of limitations.
 Tolling of Statute of Limitations {¶ 43} All of the actions which Creaturo complains of were within R.C. 2305.06's fifteen year statute of limitations. Thus, Creaturo has timely brought his claims for breach of contract. But all of those actions were completed more than four years before Creaturo first filed a complaint in the Mahoning County Court of Common Pleas on February 12, 1998, making the rest of his claims untimely.
 {¶ 44} Creaturo argues that his claims are saved since the statute of limitations was tolled. According to Creaturo, the Dukos' exerted an undue influence over Cable and the disclosures made to her would not have put a reasonable person in her position on notice of a claim. He believes this is sufficient to toll the statute of limitations.
 {¶ 45} Creaturo's argument at its most basic is that the statute of limitations should be tolled since Cable trusted the Dukos and, thus, could not realize that she had a claim against the Dukos. But the statute of limitations cannot be tolled for this reason unless a misrepresentation prevented Cable from realizing she had a claim. Cable's trust in the Dukos is not sufficient to toll the statute of limitations.
 {¶ 46} Creaturo cites two cases in support of the proposition that the statute of limitations should be tolled if the Dukos exercised an undue influence over Cable, Stine v. Menke (1925), 3 Ohio Law Abs. 497, 23 Ohio Law Rep. 528, and Edwards v. Daller (1900), 10 Ohio Dec. 508, 8 Ohio N.P. 62. Each of these cases were judgments of the Superior Court of Cincinnati, Ohio, and applied the discovery rule to cases involving "undue influence." But we cannot follow those cases.
 {¶ 47} After both Stine and Edwards were decided, the Ohio Supreme Court held that the discovery rule cannot apply to a claim unless a statute specifically states that it does apply to that claim. InvestorsREIT One v. Jacobs (1989), 46 Ohio St.3d 176. "The legislature's express inclusion of a discovery rule for certain torts arising under R.C. 2305.09, including fraud and conversion, implies the exclusion of other torts arising under the statute, including negligence." Id. at 181. We have and will continue to follow this mandate. See Helman v. EPL Prolong, Inc.,139 Ohio App.3d 231, 2000-Ohio-2593; Karlen v. Carfangia (June 2, 2001), 11th Dist. No. 2000-T-0081; Hirschl v. Evans (Mar. 27, 1996), 7th Dist. No. 94 C.A. 43. We cannot adopt the discovery rule advocated by Creaturo. The issue of when the Dukos' "baleful influence" on Cable was removed is moot.
 {¶ 48} The statute of limitations is also not tolled by the doctrine of equitable estoppel. That doctrine "precludes a party from asserting certain facts whereby his conduct the party has induced another to change his position in good faith reliance upon that conduct" and "may be employed to prohibit the inequitable use of the statute of limitations."Gullatte v. Rion (2000), 145 Ohio App.3d 620, 627; Helman at 246. Courts apply this doctrine because, as a case cited by Creaturo states,
 {¶ 49} "[O]ne cannot justly or equitably lull his adversary into a false sense of security, and thereby cause the adversary to subject a claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought." Markese v. Ellis (1967), 11 Ohio App.2d 160, 163.
 {¶ 50} But in order to invoke that doctrine, the plaintiff must demonstrate 1) that the defendant made a factual misrepresentation, 2) that it is misleading, 3) that the misrepresentation induced actual reliance which is reasonable and in good faith, and 4) that the reliance caused detriment to the relying party. Doe v. Blue Cross/Blue Shield ofOhio (1992), 79 Ohio App.3d 369, 379. If the plaintiff is not misled, then the defendant can not be estopped from raising the statute of limitations as a defense since it did not misled the plaintiff in any way. Markese at 163
 {¶ 51} This equitable doctrine only applies when there is a misrepresentation of some kind. It does not apply merely when one party exerts an undue influence over another. Thus, without evidence of some kind of misrepresentation, the statute of limitations is not tolled by a defendant's influence over a plaintiff.
 {¶ 52} Although Creaturo claims that the Dukos committed a form of fraud which concealed the fact that she had a claim from her, he points to no evidence in the record demonstrating an affirmative misrepresentation and there is no evidence of such a misrepresentation in the record. Rather, Creaturo claims that neither the Dukos, Titus, or AEFA made the "required disclosures * * * to Mrs. Cable regarding churning." But this allegation is also not supported by the record.
 {¶ 53} Most of the evidence that Creaturo relies on when making this claim is in his experts' reports. But the trial court struck the reports of Creaturo's three experts upon Appellees' motion because Creaturo failed to establish a proper evidentiary foundation for them. Creaturo has not assigned error to this decision on appeal. Thus, we cannot consider the contents of those reports when reviewing the trial court's decision.
 {¶ 54} Absent this evidence, Creaturo argues that neither Appellees nor the Dukos told Cable that her investment decisions were not in her best interests and were harmful to her. But the evidence does not support this claim. The evidence reveals that the Dukos did tell Cable that some of her investment decisions were unwise. Both Scott and Ed Duko described Cable as an investor who "knew what she wanted," but that her decisions undermined her investment plan. They both stated Cable wanted to invest in long-term investments. But she also had a habit of giving large amounts of money to her relatives. Whenever she decided to give these gifts, she would incur charges for taking the money out of the investments early. Scott Duko stated that he told Cable that her investment decisions were unwise, but that she "knew what she wanted."
 {¶ 55} Creaturo claims that the Dukos, Titus, and AEFA failed to follow both company and regulatory rules. But they fail to point to any specific evidence supporting that claim. Furthermore, there is no indication that any of Appellees' failure to disclose the type of information Creaturo complains of would have prevented Cable from realizing that she had a claim. All the evidence shows that she was an active participant who made the ultimate investment decisions on her behalf. There is simply no evidence on the record supporting Creaturo's claim that a misrepresentation or fraud prevented Cable from realizing that she had a claim against Titus and/or AEFA. Creaturo's "evidence" is little more than his original allegations of wrongdoing.
 {¶ 56} In conclusion, none of Creaturo's tort claims against either Titus or AEFA in this case are tolled. In order to toll his tort claims, Creaturo would have to produce some evidence that someone made a misrepresentation to Cable which prevented her from realizing that she had a claim. No evidence of such a misrepresentation exists in this case. Creaturo's claim that the statute of limitations was tolled is meritless.
 Savings Statute {¶ 57} Creaturo's arguments about the saving statute are only relevant if Creaturo filed his claim in Mahoning County within the applicable statute of limitations. That claim was filed in February 1998. Both Titus and AEFA had ceased having any kind of relationship with the Dukos more than four years before this date.
 {¶ 58} Because Creaturo did not file his tort claims against Titus and AEFA within the four year statute of limitations and there is no reason to toll the statute, those claims are time barred. The only claim which survives is Creaturo's contractual claim, which is the subject of the next assignment of error. Creaturo's arguments in his first assignment of error are meritless.
 Duties Imposed by Contract {¶ 59} In his second assignment of error, Creaturo argues:
 {¶ 60} "The trial court erred in granting summary judgment in favor of Defendant on a breach of contract claim where the court found that the answer to the replacement question on the life insurance policy application was not a term of the policy contract and imposed no duties on its agents when this finding is inconsistent with the ruling of a prior judge in this case and with the Supreme Court decision in Cope v.Metropolitan Life Ins. Co."
 {¶ 61} Creaturo contends that Cable's applications for investments with AEFA became part of each investments' contract. He further claims that the applications falsely stated that the investment was not replacing another investment. He then argues that AEFA breached its contract with her by funding the investments with money from other investment, thereby replacing those other investments. Creaturo's arguments are baseless.
 {¶ 62} Creaturos arguments assume that Cable had no part in forming the contract. For instance, in his brief he states that AEFA "funded Mrs. Cable's purchases" with funds from the surrenders and cancellations of other investments. But AEFA did not provide the funds; Cable is the one who purchased the investments. Cable is the one who filled out the application stating that no replacement funds were used. Cable is the one who signed the application and verified that all of the information on it was correct. It was Cable's actions that may have breached the contracts, not AEFA's.
 {¶ 63} It is difficult to see how AEFA could breach a contract because Cable incorrectly filled out an application for the contract. And Creaturo has not presented any evidence other than the arguably incorrect application to support a breach of contract claim. Creaturo's arguments are meritless. The trial court properly granted summary judgment to Appellees on this claim.
 Negligent Supervision {¶ 64} In his final assignment of error, Creaturo argues:
 {¶ 65} "The trial court erred in granting summary judgment in favor of Defendant on a negligent supervision claim where the court found that Scott and Edward Duko were independent contractors in relation to [sic] and that respondeat superior did not apply, even with substantial evidence showing that Scott and Edward Duko were `captive' agents who offered to procure and did procure numerous policies, annuities and other investments for Plaintiff's decedent."
 {¶ 66} The trial court properly granted summary judgment on all of Creaturo's claims for the reasons addressed above. The question of whether Appellees are in any way liable for the Dukos' actions is moot. Thus, we will not address the merits of this assignment of error.
 Conclusion {¶ 67} In conclusion, Creaturo attacks the trial court's decision granting summary judgment to Appellees. But Creaturo's tort claims are barred by the statute of limitations and his breach of contract claim is meritless. Thus, the trial court properly granted summary judgment and the judgment of the trial court is affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
[1] We will refer to both IDS and AEFA as AEFA.