PROGRESSIVE PREFERRED INSURANCE COMPANY, Appellee,

v.

HAMMERLEIN HELTON INSURANCE, Appellant, et al.

[Cite as Progressive Preferred Ins. Co. v. Hammerlein Helton Ins., 170 Ohio App.3d 154, 2006-Ohio-4601.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050349.

Decided Sept. 8, 2006.

J. Timothy Riker and Julie A. Schoepf, for appellee.

Rodgers and Co., L.P.A., Walter A. Rodgers, Jeffrey M. Elzeer, and Kathryn A. Kerka, for appellant.

SUNDERMANN, Judge.

{¶ 1} Hammerlein Helton Insurance ("Hammerlein") appeals the trial court's entry of judgment in favor of Progressive Preferred Insurance Company ("Progressive"). We conclude that Hammerlein's assignments of error do not have merit, and we therefore affirm the judgment of the trial court.

{¶ 2} Progressive insured Richard Thomas, doing business as Mr. T's Pizza. The insurance policy was purchased through Hammerlein. On Friday, May 5, 2000, the coverage limit of the policy was $100,000. According to Hammerlein, Thomas called the Hammerlein office on Friday, May 5, at 5:30 p.m. and left a message on the answering machine requesting that the coverage limit be raised to $1 million. On Saturday, May 6, a car driven by Charles Fritsch collided with a motorcycle ridden by Ricky Lucas and Leah Garvin. At the time of the collision, Fritsch was working as a driver for Mr. T's Pizza and was insured under the Progressive policy. Lucas and Garvin were both injured in the collision.

{¶ 3} On the morning of Monday, May 8, Lucille Schwaller, a Hammerlein employee, retrieved Thomas's message requesting the increased coverage. Thomas also reported Fritsch's accident to Hammerlein on Monday morning. Schwaller reported the accident to Progressive that morning, and later that afternoon, she called in Thomas's request for increased coverage. Progressive processed Thomas's request and raised his coverage limit to $1 million.

{¶ 4} Progressive filed a declaratory-judgment action to determine the amount of coverage available under its policy with Thomas. In the course of the litigation, various insurance companies with potential liability were added as parties. In May 2002, the trial court granted summary judgment to Cincinnati Insurance, Guide One Insurance, Thomas, and Hammerlein. The court concluded that the coverage amount was $1 million. Progressive appealed, but its appeal was dismissed because the trial court's decision had not resolved all the counterclaims and cross-claims that were pending. While the remaining claims were pending, Progressive paid $40,035 to Lucas and $500,000 to Garvin in settlement of their claims against it.

{¶ 5} With Hammerlein's consent, Progressive filed a second amended complaint after the trial court granted summary judgment. The second amended complaint alleged that Hammerlein had breached the Progressive Producer's Agreement and Progressive's Ohio On–Line Guide. Progressive sought indemnification from Hammerlein for the amount over $100,000 that Progressive had paid under Thomas's policy. Hammerlein moved for summary judgment on the second amended complaint. Before the court decided the motion for summary judgment, the case was reassigned to a different judge. Hammerlein's motion

for summary judgment was denied by the trial court. After a bench trial, the trial court concluded that Hammerlein had to reimburse Progressive for any amount that it had paid over $100,000.

{¶ 6} In its first assignment of error, Hammerlein asserts that the trial court erred in denying its second motion for summary judgment. Hammerlein argues that under the law-of-the-case doctrine, the second trial judge was bound by the first trial judge's conclusions that Hammerlein had not backdated the request for increased coverage and that there had been a meeting of the minds. We disagree.

{¶ 7} Because the trial court's May 2002 entry of summary judgment was not a final order, it was "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."[1] The law-of-the-case doctrine is a rule of practice as opposed to a binding rule of substantive law.[2] "A general view of the law of the case doctrine should not be taken to imply that a trial court can never, under any circumstances, reconsider its prior ruling."[3] Because we conclude that the trial court was not bound by the earlier decision granting summary judgment to Hammerlein, we consider whether the second summary-judgment motion was improperly denied.

{¶ 8} Summary judgment is properly granted when there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence viewed most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.[4] We conclude that there was a genuine issue of material fact regarding whether Hammerlein had backdated Thomas's request. The first assignment of error is overruled.

{¶ 9} The trial court found that there had been no meeting of the minds between Thomas and Hammerlein regarding the request for increased coverage on Friday and that Hammerlein had backdated the request. In its remaining two

1. Civ.R. 54(B).

2. *Creaturo v. Duko,* 7th Dist. No. 04 CO 1, 2005-Ohio-1342, 2005 WL 678513.

3. *Clymer v. Clymer* (Sept. 26, 1995), 10th Dist. No. 95APF02–239, 1995 WL 571445.

4. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189.

assignments of error, Hammerlein asserts that the trial court erred in making these findings.

{¶ 10} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."[5]

{¶ 11} Kimberly Haycox, a Progressive employee, testified that it was not unusual for her to process a policy change on a Monday with an effective date on the prior Friday. According to Haycox, once the agent and the insured agreed on the policy change, the agent would bind the coverage, and Progressive would process the change. But the effective date could not be a date prior to the agreement between the agent and the insured. Progressive argued that because there was not a meeting of the minds between Hammerlein and Thomas on Friday, the effective date should have been Monday at the earliest.

{¶ 12} In order for there to have been an agreement between Hammerlein and Thomas sufficient to bind the coverage, there needed to be a meeting of the minds about the amount of the increase in coverage. The testimony at trial was that Thomas had left a message in which he stated a range of coverage before settling on the $1 million amount. In his message, Thomas also asked that Chris Helton, the owner of Hammerlein, "[c]all [him] back and let [him] know." Because there was no time/date function on the answering machine, it is not clear that Thomas had left his message on Friday. Schwaller included both "Fri" and "Sat" on the note regarding the call.

{¶ 13} There was testimony that Progressive had raised the coverage limit with an effective date of May 5 and that Progressive had accepted Thomas's premium payment based on the May 5 effective date. But that evidence did not affect the determination about whether there had been a meeting of the minds between Hammerlein and Thomas on May 5. At issue in the case was not whether Progressive had properly complied with its policy with Thomas, but whether Hammerlein had breached its agreement with Progressive, resulting in Progressive's being compelled to honor a contract with an effective date that was incorrect. After reviewing the record, we conclude that the trial court's conclusion that there had not been a meeting of the minds on Friday, May 5, was supported by competent and credible evidence.

{¶ 14} Because there was no meeting of the minds until at least Monday, May 8, the effective date for the coverage increase could not have been any earlier than that Monday. The trial court's finding that Hammerlein had backdated the

5. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

request was not against the manifest weight of the evidence. The second and third assignments of error are without merit.

{¶ 15} Therefore, the judgment of the trial court is affirmed.

Judgment affirmed.

HENDON, J., concurs.

DOAN, P.J., dissents.

DOAN, Presiding Judge, dissenting.

{¶ 16} I respectfully dissent. Progressive initially filed a complaint for declaratory judgment, requesting that the trial court determine "the bodily injury liability and property damage coverages under [the policy issued by Progressive to Thomas] at the moment of [the accident]." Progressive subsequently filed an amended complaint for declaratory judgment, stating that "certain issues have arisen regarding the rights, status, and other legal relations between Progressive and its insured" and requesting a declaration as to the "limits and coverages" of the policy at the time of the accident. Progressive alleged in its amended complaint that Hammerlein had "obtained" the policy for Thomas and "may have an interest in this matter." Progressive further alleged that "on May 8, 2002, through Hammerlein Helton Insurance, the limits of coverage under this policy were increased * * * to $1,000,000 combined single limit effective May 5, 2000."

{¶ 17} In the original and amended complaints, Progressive requested a declaration of its rights and responsibilities in relation to its insured, Thomas. Neither complaint for declaratory judgment set forth any claims against Hammerlein. Hammerlein, Thomas, and various other defendants filed motions for summary judgment, which the trial court granted. In granting the motions, the trial court essentially issued what Progressive had requested in its amended complaint: a declaration of its rights and responsibilities to Thomas under the policy. In issuing its declaration, the court determined, based upon the "undisputed evidence," that Progressive had "intended to and did issue a $1,000,000 policy to its insured, Richard Thomas, retroactive to May 5, 2000," and that it did so after having been informed of the May 6 accident. The court declared that Thomas had coverage of $1,000,000 under the Progressive policy effective May 5, 2000.

{¶ 18} Subsequently, Progressive filed a motion for leave to file a second amended complaint. The trial court, with the agreement of Progressive and Hammerlein, placed of record an entry granting Progressive's motion. Progressive filed its second amended complaint, alleging that "on May 8, 2000, when Hammerlein Helton personnel requested that the increase in coverage be made effective May 5, 2000, they breached the Producer's Agreement and the Ohio On–

Line Guide." Progressive requested that Hammerlein be ordered to indemnify it for any amounts paid over the $100,000 single-limit combined coverage. After the second amended complaint was filed, the case was reassigned to another judge. Following a bench trial, the second judge determined that "there was no meeting of the minds" between Hammerlein and Thomas sufficient to increase the insurance coverage effective May 5, 2000, and that Hammerlein had breached the Producer's Agreement and the Ohio On–Line Guide on May 8, 2000, by requesting an increase in Thomas's coverage effective May 5, 2000, because Hammerlein had "backdated" an "incomplete request for a commercial vehicle policy change endorsement."

{¶ 19} I view the first trial judge's entry of summary judgment under Progressive's first amended complaint as a declaration that Thomas was entitled to $1,000,000 of coverage under the Progressive policy effective May 5, 2000. This declaratory judgment disposed of the legal issues concerning Progressive and Thomas, effectively ending the litigation between those parties. The second trial judge's decision stated that the $1,000,000 coverage was not effective on May 5, 2000, because there was no "meeting of the minds" between Hammerlein and Thomas as to coverage amounts. Where does this leave Thomas? If, as the second trial judge found, the $1,000,000 coverage was not effective on May 5, 2000, because there was no "meeting of the minds * * * sufficient to increase the coverage," then Progressive is obligated to provide Thomas only $100,000 in coverage for the accident on May 6. Such a result directly contradicts the declaration of rights issued by the first trial judge. Further, if, as the second trial judge found, the $1,000,000 coverage was not effective on May 5, 2000, then Hammerlein is not liable for any indemnification because Progressive is obligated to provide only $100,000 in coverage.

{¶ 20} I would hold that the second trial judge was bound by the first trial judge's declaration that Progressive was obligated to provide Thomas with coverage of $1,000,000 effective May 5, 2000. I would also hold that the breach-of-contract claims raised by Progressive against Hammerlein in the second amended complaint were inappropriate for disposition in a declaratory-judgment action. That being said, given the posture of this case, I would sustain the first assignment of error to the extent that it alleges that the second trial judge was bound by the first trial judge's declaration that Progressive was obligated to provide Thomas with coverage of $1,000,000 effective May 5, 2000.

{¶ 21} Further, I do not believe that the issue litigated between Progressive and Hammerlein should have been whether Hammerlein and Thomas had come to a meeting of the minds about coverage amounts. Any question to that effect was effectively ended by the first trial court's declaration that "the court finds that there was a contract and Progressive is bound to fulfill its terms under the

contract." The question, as I see it, was whether a breach of contract by Hammerlein resulted in Progressive's obligation to provide Thomas with coverage of $1,000,000 effective May 5, 2000. I point out that the first trial judge's declaration stated that it was undisputed that (1) on May 8, 2000, Hammerlein, on Thomas's behalf, requested an increase in coverage effective May 5, 2000, and reported the May 6 accident; (2) Progressive knew about the accident when it, through Hammerlein, increased the coverage limits to $1,000,000 effective May 5; and (3) Progressive billed Thomas for the $1,000,000 coverage retroactive to May 5, and Thomas paid the premium. I would reverse the judgment of the trial court and remand the cause with instructions that the trial court reconsider its decision in that light.