[Cite as *Meyer Tool, Inc. v. Mikrolar, Inc.*, 2023-Ohio-704.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MEYER TOOL, INC., | : | APPEAL NO. C-220290 |
| | | TRIAL NO. A-2101354 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| MIKROLAR, INC., | : | |
| Defendant-Appellant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 8, 2023

*Graydon Head & Ritchey LLP* and *Daniel J. Knecht*, for Plaintiff-Appellee,

*Taft Stettinius & Hollister LLP* and *Anna M. Greve*, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}   Most of the time, when you pay for a good, you expect the good to be provided by the seller (or at least your money back).  In this case, the seller endeavors to convince us that it should be entitled to keep the buyer's money it received and not furnish the good.  Not only does this flout common sense, but we also cannot reconcile it with basic doctrines of contract law.  The trial court, seeing things the same way, ruled in favor of the buyer and awarded it the amount it paid for the good in damages.  For the reasons explained below, we affirm its judgment.

I.

{¶2}   In October 2016, plaintiff-appellee Meyer Tool, Inc., requested a quote from defendant-appellant Mikrolar, Inc., for certain custom robotics (called a "hexapod").  Later that month, Mikrolar's president Michael Fortier gave Meyer Tool a quote for two of Mikrolar's P1000 Hexapod systems and two P1000 sealing systems (also called "boots") for a total price of $149,500, plus delivery expenses.  In their discussion, Meyer Tool suggested to Mr. Fortier the possibility that Meyer Tool could order up to 20 more of the machines, depending on the success of the first two systems.

{¶3}   In December 2016, Meyer Tool placed a purchase order for two P1000 Hexapod systems and two P1000 boots consistent with the quote.  Mikrolar would custom-design these machines, fashioned with specifications unique to Meyer Tool.  The purchase contract required that issues concerning the transaction, including any cancellation, be in writing.

{¶4}   In October 2017, Mikrolar delivered the first hexapod to Meyer Tool.  Mikrolar shipped one of the two hexapods per Meyer Tool's specific instruction.  At this point, Meyer Tool told Mikrolar to pause work because it was not ready for

2

delivery of the second hexapod. Mikrolar obliged. After some time passed, Mikrolar began reaching out to Meyer Tool to determine what to do with the second hexapod that it had already completed.

{¶5} Following a series of communications between the parties, Scott Hudson of Meyer Tool told Mr. Fortier that he would visit Mikrolar's facility to review the second hexapod and would schedule delivery after that inspection. Mr. Fortier followed up with Meyer Tool a number of times to request a time for inspection of the hexapod in advance of shipping. In July 2018, Mr. Hudson visited Mikrolar's facility to confirm that the hexapod specifications were correct (and, apparently, they were). After this visit, Mr. Hudson told Mr. Fortier not to ship the second hexapod, explaining that the lack of manpower at Meyer Tool would prevent them from integrating the hexapod into their system at that time. Mr. Fortier and Mr. Hudson spoke by phone several times after Mr. Hudson's July 2018 visit. Each time, Mr. Hudson told Mr. Fortier that Meyer Tool was not ready for the second hexapod to be shipped. In October 2018, however, Meyer Tool issued a $45,000 check to Mikrolar for the final payment owed to Mikrolar under the purchase contract.

{¶6} In March 2019, Mr. Hudson notified Mr. Fortier that Meyer Tool had discontinued the program for which they had originally ordered the hexapods. As far as the record discloses, Meyer Tool did not mention scheduling delivery of the second hexapod during this phone call, nor did Mikrolar inquire as to what it should do with the completed hexapod.

{¶7} After nearly two years passed (including an intervening global pandemic), in January 2021, Meyer Tool's director of engineering reached out to Mr. Fortier to inquire into the status of the second hexapod. By this point, however,

Mikrolar no longer had possession of the second hexapod. It is unclear from the record what happened to the hexapod, whether it was sold to another buyer or disassembled for its parts. Without the ability to deliver the second hexapod, Mikrolar declined to reimburse the money Meyer Tool paid for the hexapod, concluding that Meyer Tool either abandoned the contract or prevented Mikrolar's performance.

**{¶8}** After paying $70,000 for the second hexapod and accompanying boots but ending up empty-handed, in April 2021, Meyer Tool filed a complaint against Mikrolar for breach of contract and unjust enrichment. After the parties cross-moved for summary judgment, the trial court granted Meyer Tool's summary judgment motion and denied Mikrolar's cross-motion, finding that Meyer Tool was owed $70,000 in damages ($60,000 for the hexapod and $5,000 each for the two boots). Mikrolar now appeals, raising two assignments of error.

II.

**{¶9}** In its first assignment of error, Mikrolar alleges that the trial court erred in granting Meyer Tool's motion for summary judgment. We review this question de novo, conducting an independent review of the record to determine the propriety of summary judgment. *See Al Neyer, LLC v. Westfield Ins. Co.*, 1st Dist. Hamilton No. C-200007, 2020-Ohio-5417, ¶ 13. "Under Civ.R. 56(C), summary judgment is proper where the moving party establishes that '(1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is

made.' " *Id*. at ¶ 14, quoting *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9.

{¶10} The elements of a breach of contract claim are familiar: "(1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages resulting from the breach." *Brendamour v. City of the Village of Indian Hill*, 1st Dist. Hamilton Nos. C-210504, C-210516 and C-210517, 2022-Ohio-4724, ¶ 18, citing *White v. Pitman*, 2020-Ohio-3957, 156 N.E.3d 1026, ¶ 37 (1st Dist.). Mikrolar insists that Meyer Tool's claim for breach of contract cannot succeed because Mikrolar did not breach the contract, invoking various principles of contract law in support of this assertion. We disagree.

{¶11} Central to our rejection of each of Mikrolar's defenses to Meyer Tool's breach of contract claim is the fact that the purchase order contained a cancellation clause that provided, "Any order or contract may be terminated by buyer only upon written notice and payment of reasonable and proper termination charges plus a fixed sum of 10% of the final net P.O. price * * *." The contract also reiterated, "[Mikrolar] shall communicate, *in writing*, with Meyer Tool, Inc. as it pertains to issues for resolution, or communication relative to the information contained within this purchase order." (Emphasis added.) These clauses are unambiguous. Written communication was required to cancel the contract. *Retirement Corp. of Am. v. Henning*, 1st Dist. Hamilton No. C-180643, 2019-Ohio-4589, ¶ 18 ("Contracts that are clear and unambiguous will be enforced according to their terms.").

{¶12} Without any written cancellation to point to, Mikrolar relies on a phone call in which Meyer Tool's Mr. Hudson told Mikrolar's Mr. Fortier that the program for which it had purchased the two robots had been discontinued. But nowhere in this

phone call (so far as the record discloses) did Mr. Hudson indicate that he no longer expected the terms of the parties' existing contract to be performed as agreed, nor did he purport to cancel the parties' contract. If Mikrolar believed from either Mr. Hudson's phone call or from Meyer Tool's course of conduct that the contract was canceled, the express terms of the contract required Mikrolar to memorialize this inference through a written communication in order to afford Meyer Tool notice of its intended course of action. Nothing prevented Mikrolar from reaching out to Meyer Tool, in writing, to give Meyer Tool a final chance to schedule delivery of the second hexapod upon notice that it would cancel the contract if Meyer Tool failed to do so. Nor do we see anything in the record that would have prevented Mikrolar from simply shipping the hexapod (which apparently is about the size of a microwave oven) to Meyer Tool.

{¶13} Unable to demonstrate compliance with the writing requirement, Mikrolar posits that Meyer Tool's conduct waived the requirement that cancellation be in writing. Specifically, Mikrolar argues that Meyer Tool's extended delay in scheduling delivery of the second hexapod sufficed to show cancellation. Where a contract specifically provides that cancellation must be made in writing, the clause is valid and binding upon the parties, and the contract cannot be cancelled without a written directive unless the writing requirement is waived. *See Setzekorn v. Kost USA, Inc.*, 12th Dist. Warren No. CA2008-02-017, 2009-Ohio-1011, ¶ 11, quoting *Uebelacker v. Cincom Sys., Inc.*, 48 Ohio App.3d 268, 271, 549 N.E.2d 1210 (1988) (where the court, in enforcing a contractual provision requiring written notice for cancellation, noted that "[w]here a contract's terms are clear and unambiguous, 'the court need not go beyond the plain language of the agreement to determine the parties'

6

rights and obligations; instead, the court must give effect to the agreement's express terms.' "). "Proof of a waiver must either be in writing, or by clear and convincing evidence sufficient to leave no reasonable doubt that the [party] intended to waive the writing requirement." *Joel Lehmkuhl Excavating v. City of Troy*, 2d Dist. Miami No. 2004-CA-31, 2005-Ohio-2019, ¶ 30; *see 3637 Green Rd. Co. v. Specialized Component Sales Co.*, 2016-Ohio-5324, 69 N.E.3d 1083, ¶ 22 (8th Dist.) ("The waiver must be clear and unequivocal if it contradicts a written contract provision."). Here, the record reveals no proof of waiver in writing, and we cannot say that Meyer Tool's actions constituted "clear and convincing evidence" of its intent to waive the writing requirement. A mere extended delay in communication does not rise to the level of clear evidence that Meyer Tool intended to waive the written cancellation requirement.

{¶14} In fact, the record discloses no discussions at all about the writing requirement. While the parties apparently did not speak between 2019 and 2021 (and blame each other for the lack of engagement), this silence does not rise to the level of overcoming the plain terms of the written cancellation requirement. Although the foregoing analysis explains, in large measure, why we reject Mikrolar's first assignment of error, we proceed to address each of its subarguments in turn.

{¶15} First, Mikrolar claims that it was released from performance because it was prevented from performing. Prevention of performance is a defense to a claim for breach of contract. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 68 ("[T]he prevention of performance doctrine precludes a party who prevents another from performing its contractual obligations from relying on that failure of performance to assert a claim for breach of contract * * *.").

7

According to Mikrolar, Meyer Tool's failure to schedule delivery of the second hexapod until nearly three years after entering into the purchase agreement constitutes a prevention of performance.

{¶16} But beyond a few discussions regarding scheduling a delivery, Mikrolar never attempted to deliver the second hexapod. And as discussed above, it is undisputed that Meyer Tool paid Mikrolar for the hexapod that it never received and that neither party provided written notice of repudiation of the contract. Mikrolar protests that it should not be saddled with holding onto the hexapod indefinitely. Fair enough, but nothing prevented it from actually delivering the product, or from continuing to store the second hexapod and perhaps charging Meyer Tool with the associated storage costs. Mikrolar alone made the unilateral decision to dismantle or otherwise dispose of the hexapod without advising Meyer Tool that it intended to do so.

{¶17} Mikrolar references *Stone Excavating, Inc. v. Newmark Homes, Inc.*, 2d Dist. Montgomery No. 20307, 2004-Ohio-4119, in support of its assertion that it was prevented from performing, and therefore did not breach the contract. In *Stone Excavating*, plaintiff contractor contracted with defendant developer to lay asphalt, among other work. *Id.* at ¶ 2-3. Six months after finishing the other work, plaintiff asked for permission to lay the second and final layer of asphalt. Defendant declined, citing the need to complete other work first. *Id.* at ¶ 6. Two years later, defendant finally requested that plaintiff lay the second layer of asphalt, but plaintiff refused. *Id.* at ¶ 8. The Second District affirmed the trial court's judgment in favor of plaintiff, explaining, "[i]t is undisputed that [defendant] refused to allow [plaintiff] to place the final layer of asphalt within the two-year period the trial court found was a reasonable

8

time for [plaintiff's] performance of its promises under the contract. Therefore, [defendant] cannot rely on [plaintiff's] failure to perform that work * * * to show non-performance." *Id*. at ¶ 18.

{¶18} However, we can easily distinguish *Stone Excavating* from the case before us. In *Stone Excavating*, the court was guided by an existing building regulation that required contractors to complete all development work within two years. *Id*. at ¶ 5. No such regulation requiring delivery of goods within a certain timeframe is present in the case at hand. And more importantly, the plaintiff in *Stone Excavating* never received payment from the defendant for work that the plaintiff later refused to perform. *Id*. at ¶ 4. Here, Mikrolar received payment from Meyer Tool for everything and then refused to deliver the goods as promised. Not surprisingly, Mikrolar proves unable to point to any case in Ohio where a seller received payment, declined to supply the good, and the court blessed that arrangement.

{¶19} Next, Mikrolar claims that it was excused from performance because Meyer Tool exceeded a reasonable time to demand performance.[1] Specifically, Mikrolar argues that Meyer Tool only had a reasonable time to demand delivery, which it exceeded. Ohio law recognizes that a party has a "reasonable time" to demand delivery of performance when the promise to perform is clear but the contract fails to specify any time for performance. *See Stocker v. Cochran's Decorative Curbing Inc.*, 7th Dist. Mahoning No. 09 MA 128, 2010-Ohio-1542, ¶ 36; R.C. 1302.22.

{¶20} But none of the cases to which Mikrolar cites stand for the proposition that if a buyer fails to "demand" delivery of goods for which it has already paid, the

---

[1] Mikrolar suggests that, because the contract specified delivery 20 weeks after receipt of order, Meyer Tool exceeded a reasonable time to demand performance. But Mikrolar concedes that it worked well past the 20-week timeframe, thus breaching this provision itself.

buyer has forfeited the goods *and* the money paid for them. And "[t]he obligation of good faith * * * requires reasonable notification before a contract may be treated as breached because a reasonable time for delivery or demand has expired. This operates both in the case of a contract originally indefinite as to time and of one subsequently made indefinite by waiver." UCC 2-309, Comment 5; *Davis v. Suggs*, 10 Ohio App.3d 50, 51, 460 N.E.2d 665 (12th Dist.1983). As discussed above, Mikrolar did not provide Meyer Tool with notice that it was treating the contract as breached or otherwise cancelling the contract. We accordingly see no evidence in the record to suggest that Meyer Tool exceeded a reasonable time to demand performance.

{¶21} Third, Mikrolar asserts that it was excused from performance because Meyer Tool abandoned the contract. "[A] contract will be treated as abandoned when the acts of one party, which are inconsistent with the existence of the contract, are acquiesced in by the other party." *Hunter v. BPS Guard Servs., Inc.*, 100 Ohio App.3d 532, 541, 654 N.E.2d 405 (10th Dist.1995).

{¶22} But in the case at hand, Meyer Tool paid Mikrolar in full for the two hexapods and boots—the quintessential act of acknowledging the existence of a contract. Moreover, in *Davis*, the Twelfth District considered a seller's defense of abandonment. In that case, the buyer paid $1,500 for a truck bed, but found when he went to retrieve it "over two years later" that the seller had sold it to someone else without ever providing the original buyer notice. *Davis* at 51. The seller argued that there was an implied condition for the buyer to retrieve the truck bed within a reasonable time, and attempting to retrieve it two years after payment was not reasonable. *Id*. The Twelfth District rejected this argument, stating that " '[t]he obligation of good faith * * * requires reasonable notification before a contract may be

treated as breached * * * .' " *Id.*, quoting Comment 5 to R.C. 1302.22 (UCC 2-309). Here, as discussed above, Mikrolar did not attempt to notify Meyer Tool, in writing or otherwise, that it was cancelling the contract, reselling the hexapod, or disassembling the hexapod. And it is well-established in Ohio caselaw that, for a contract to be abandoned, there must be an "absolute unequivocal relinquishment" of a party's right. *Davis* at 52, quoting *State ex rel. Reeder v. Mun. Civ. Serv. Comm.*, 82 Ohio Law Abs. 225, 237, 165 N.E.2d 490 (C.P. 1958), *affirmed* 166 N.E.2d 264 (10th Dist.1959). "Mere non-use is not sufficient to establish the fact of abandonment." *Davis* at 52. On this record—and specifically the fact that Meyer Tool paid Mikrolar for both hexapods—it cannot be said that Meyer Tool unequivocally relinquished its right to the delivery of the second hexapod. Accordingly, Mikrolar fails to demonstrate a valid abandonment defense.

{¶23} Mikrolar goes on to assert that Meyer Tool's claim for unjust enrichment fails because a claim for unjust enrichment cannot exist when a contract governs the transaction. However, the trial court based its decision on its finding that Mikrolar breached the parties' contract, and since we agree with that conclusion, it obviates the need to analyze any unjust enrichment claim.

{¶24} Finally, Mikrolar maintains that Meyer Tool's damages must be reduced by virtue of the cancellation provision. The cancellation provision states that "[a]ny order or contract may be terminated by buyer only upon written notice and payment of reasonable and proper termination charges plus a fixed sum of 10% of the final net P.O. price to compensate for disruption in scheduling * * *. Reasonable and proper termination charges will be as follows: Already purchased components actual price + 20% and the service hours performed at the agreed upon rate. ($100/hr) Added to this

11

would be 10% of the entire value of the PO." Relying on this, Mikrolar invokes it to offset damages.

{¶25} However, as discussed above, Mikrolar adduced no written evidence that Meyer Tool cancelled the contract, and in fact, Meyer Tool paid in full. Since neither party invoked the cancellation provision, it would be improper to trigger that clause to benefit the breaching party.

{¶26} Meyer Tool satisfied its burden of establishing no genuine issue of material fact on the question of breach of contract, demonstrating that Mikrolar accepted payment for the second hexapod and two boots, but did not—and cannot—deliver them as agreed. And as discussed, Mikrolar failed to meet its reciprocal burden to establish at least a genuine issue of material fact with regard to its various defenses. Accordingly, Meyer Tool is entitled to summary judgment on its claim for breach of contract for $70,000, and the trial court properly entered judgment in its favor. We overrule Mikrolar's first assignment of error.

III.

{¶27} In its second assignment of error, Mikrolar claims that the trial court erred in denying its cross-motion for summary judgment, citing the same reasons it discussed in the first assignment of error. As this is simply a mirror-image of the analysis of the first assignment of error, we reject it for the same reasons explained above. The second assignment of error is overruled.

\* \* \*

{¶28} In light of the foregoing analysis, we overrule both of Mikrolar's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER, J.,** concurs.
**ZAYAS, P.J.,** concurs in judgment only.


Please note:

    The court has recorded its entry on the date of the release of this opinion.