[Cite as *Toronto City Schools Bd. of Edn. v. Ascent Resources Utica, L.L.C.*, 2024-Ohio-1436.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

BOARD OF EDUCATION,
TORONTO CITY SCHOOLS ET AL.,

Plaintiffs-Appellees,

v.

ASCENT RESOURCES – UTICA, LLC, ET AL.,

Defendants-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 JE 0002**

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 15 CV 245

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed in Part, Reversed in Part, and Remanded.

---

*Atty. Lee E. Plakas*, *Atty. Gary A. Corroto*, *Atty. Kristen S. Moore*, and *Atty. Lauren A. Gribble*, Plakas Mannos, for Plaintiffs-Appellees and

*Atty. Kevin L. Colosimo* and *Atty. Christopher W. Rogers*, Frost Brown Todd, LLC, for Defendants-Appellant.

Dated:  April 16, 2024

**HANNI, J.**

{¶1}   Defendant-Appellant, Ascent Resources - Utica, LLC (Appellant), appeals the December 21, 2021 order of the Jefferson County Court of Common Pleas denying in part its motion for partial summary judgment.   Appellant also appeals the court's January 21, 2022 judgment granting in part the remaining landowners/lessors' (Appellees) motion for summary judgment.   The trial court issued a Final Order on January 5, 2023 stating that all claims had been adjudicated in its prior two orders.   These judgments stem from our February 3, 2020 reversal and remand of the trial court's prior granting of summary judgment in 2018.   *Bd. of Edn. Toronto City Schools v. Am. Energy Utica, L.L.C.*, 2020-Ohio-586, 152 N.E.3d 378 (7th Dist.), (*Toronto 1*).

{¶2}   In its brief, Appellant identifies the remaining Appellees, parcels, and other relevant information in the following Table:

### TABLE A

| Plaintiff | Parcel Nos. Covered by Lease | Acreage Claimed | Total Damages Claimed | Damages Awarded (Plus Interest) |
|---|---|---|---|---|
| Board of Education, Toronto City Schools | 19-02336-000 | 20.508 | $133,302.00 | $133,302.00 |
| Martin Group | 24-00837-002 (Mineral Parcel) | 21.407 | $139,145.50 | $139,145.50 |
| Brock, Robert and Rebecca | 09-00243-000 | 1.6 | $8,800.00 | $8,800.00 |
| Cherepko, Robert and Kimberly | 45-01225-004 | 14.37714 | $98,483.41 | $98,483.41 |
| Duffin, James and Lieba[5] | 11-00349-000 | 12.66 | $82,330.00 | $82,330.00 |
| Duffin, Jeffrey and Beverly | 11-00349-000 | 12.66 | $82,330.00 | $82,330.00 |
| Ramirez, Judith A. Duffin | 11-00349-000 | 12.66 | $82,300.00 | $82,300.00 |
| Fray, Stanley and Sharon; Fray, Howard and Uta; Fray, Charles W. | 50-01049-000 | 94.13 | $644,790.50 | $644,790.50 |
| Hazelip | Part of 15-02163-000 (Mineral) | 16.79 | $109,153.00 | $109,153.00 |
| Kellermier, Harry | 15-01325-000 | 160 | $1,040,000.00 | $1,040,000.00 |
| Kellermier, Harry | 15-01324-000 | 174.88 | $1,136,720.00 | $1,136,720.00 |
| Kellermier, Harry | 34-00909-000 | 2 | $13,000.00 | $13,000.00 |

| | | | | |
|---|---|---|---|---|
| Kellermier, Harry | 34-00908-000 | 0.6 | $3,900.00 | $3,900.00 |
| Moran, Patrick S. and Joelle L. | 23-00152-009 | 6 | $39,000.00 | $39,000.00 |
| Moran, Patrick S. and Joelle L. | 23-00152-010 | 6 | $39,000.00 | $39,000.00 |
| Moran, Patrick S. and Joelle L. | 23-00152-011 | 6 | $39,000.00 | $39,000.00 |
| Ondusko, Eugene | 23-00702-000 | 22.33 | $145,145.00 | $145,145.00 |
| **Total** | | **584.62014** | **$3,836,399.41** | **$3,836,399.41** |

(Appellant's Br. at 6-7).

**{¶3}** For the following reasons, we reverse the trial court's judgment as to Appellees' motion for partial summary judgment and again remand the instant case.

## PROCEEDINGS PRIOR TO *TORONTO I*

**{¶4}** In 2013, Appellant retained Great River Energy, LLC (GRE) as its land services agent. GRE entered into oil and gas leases with Appellees in Southeastern Ohio. The leases incorporated terms of an Order of Payment (OOP). The OOP stated in pertinent part:

> [GRE] will tender payment of the initial consideration to the Lessor identified in the Paid Up Lease ("the Lease") * * *, as indicated herein by checks within 120 days of its receipt of the original of this Order of Payment and the executed Lease. Payment is conditioned upon title to the property interests leased being confirmed satisfactorily to GRE, in its sole discretion. A prior unsubordinated mortgage shall constitute a title defect and is a basis to render title unacceptable. Upon notification by GRE of the title defect(s), Lessor shall have a period of ninety (90) days to cure any title defect ("cure period"). Should Lessor cure the title defect(s) within the 90 day cure period, Lessor shall be paid as set forth herein by GRE. * * * No default for non-payment may be claimed by Lessor during said 120-day period.

> If Lessor owns more or less than the net interest defined herein, GRE may, without immediate notice to Lessor, increase or reduce the consideration payable hereunder proportionate to the actual interest owned by Lessor.

GRE may surrender the Lease associated with the Order of Payment only upon the existence of a title defect and Lessor's inability to cure such defect within the cure period. If the Lease is surrendered due to the presence of a title defect(s) and Lessor is unable to cure such title defect(s) within the cure period, the Lessor may retain any consideration paid at the time of signing the Lease but is not entitled to any additional amount. If the Lease has not been surrendered or payment made by the specified due date, then Lessor shall notify Lessee in writing and Lessee shall have 30 days from receipt of such written notice to make payment.

*Toronto 1*, quoting OOP.

**{¶5}** In 2015, Appellees filed a complaint against Appellant and GRE alleging breach of contract, among other claims. They alleged that Appellees fell into three groups: (1) those who never received a notice of title defect; (2) those who received untimely notice of a title defect, but cured the defect within the 90-day period; and (3) those who received untimely notice of a title defect. Appellees alleged that Appellant was liable because GRE was its agent.

**{¶6}** On December 12, 2016, the trial court denied Appellant's motion to dismiss it from the lawsuit. Appellant had asserted that it was not liable because it was a disclosed principal and the lease named only GRE as the lessee, which meant that Appellees chose to contract with only GRE.

**{¶7}** Appellees filed a motion for summary judgment on their contract claims, asserting that Appellant was a party to the leases based on agency principles. They also contended that tendering the full signing bonus was automatic if the title work was not completed within the 120 days under the OOP. Some Appellees filed affidavits stating they did not receive notice of a title defect within the 120-day period and they were not paid for all acreage listed in their leases.

**{¶8}** Appellant responded and filed a list of affirmative defenses, stating that it was entitled to file these defenses because it had not yet filed an answer since its motion to dismiss was pending.

**{¶9}** On March 23, 2017, the trial court granted Appellees' motion for summary judgment on their contract claims against Appellant. The court found that Appellant was

a principal and became a party to the leases because the leases were made on its behalf by GRE, its authorized agent.

**{¶10}** The court further held that Appellees were entitled to the signing bonus on all acres listed in the leases, even if they did not own the minerals or were unable to lease them due to a pre-existing lease. The court found that once GRE failed to provide written notice of a title defect within 120 days, the obligation to pay the full signing bonus on all acreage listed in the lease was automatic, regardless of title. The court left the issues of breach of contract and damages for future summary judgment proceedings.

**{¶11}** Appellees thereafter filed another summary judgment motion. Appellant also filed a motion for the court to reconsider the March 23, 2017 judgment based on a successful motion for recusal. Appellant further filed leave to amend its answer to include accord and satisfaction, which was denied.

**{¶12}** On November 20, 2018, the court granted Appellees' motion for summary judgment. The court reconsidered the March 23, 2017 decision and held that Appellant was bound under agency law, Appellees were not provided notice of a title defect before the 120-day expiration period, and Appellees provided notice of default. The court further held that Appellees were not paid full signing bonuses as required under the leases, and the obligation to pay those bonuses became absolute after the 120-day review period expired without notice of a title defect.

**{¶13}** The court further found that Appellant failed to provide sufficient evidence to establish a genuine issue of material fact on its claims of waiver, estoppel, or accord and satisfaction. The court also held that Appellant's discovery admissions established that Appellees were not provided timely notice of title defects. The court concluded that Appellant and GRE were jointly and severally liable for the full amount of the signing bonuses in each OOP.

**{¶14}** Appellant appealed the trial court's judgment.

### TORONTO I

**{¶15}** On February 3, 2020, we issued *Toronto 1*, 2020-Ohio-586, 152 N.E.3d 378 (7th Dist.). We affirmed the trial court's denial of Appellant's motion to amend its answer to add accord and satisfaction as an affirmative defense. *Id.* at ¶ 75. We also held that

the trial court correctly determined that Appellant was a principal who became a party to the leases through GRE, its authorized agent. *Id.* at ¶ 36-37.

{¶16} In addition, we reversed the trial court's decision finding that the plain language of the OOP automatically required full bonus payments for all listed acreage when a deadline was missed. *Id.* at ¶ 60. We explained that:

> [a]lthough we reverse the entry of summary judgment which found the obligation to pay the entire bonus became absolute upon untimely notice, the landowners are not prohibited from showing actual damages for breach of the title review clause. In other words, a faulty title review process may be a breach, but the remedy is not necessarily a full signing bonus to each landowner regardless of their ability to show damages. This incorporates an argument from Appellant's third assignment of error at part C on whether an injury resulted from the breach. Damages are not awarded for mere breach of contract but for injury sustained as a result of that breach. Damages should only place the injured party in as good a position as he would have occupied absent the breach. [citation omitted].

*Id.* at ¶ 63. We explained that the trial court awarded damages without Appellees showing that they were able to lease the mineral interests or were damaged by the breach. *Id.* at ¶ 64. We noted that the case did not reach the evidentiary stage "where certain issues were ripe (such as ownership, title defect, complete or partial cure, ability to cure, or extent of actual damages)" because the trial court granted Appellees summary judgment and held Appellant liable for the full signing bonuses. *Id.* at ¶ 64, fn. 7. In conclusion, we:

> sustained Appellant's argument on lease interpretation in part, affirm[ed] the decision finding breach of the title review clause, reverse[d] the decision finding automatic entitlement to damages in the amount of the full signing bonus, and remand[ed] for further proceedings where a showing of damages would be required by each landowner.

*Id.* at ¶ 65. Finally, we upheld the trial court decision deeming GRE's discovery admissions as admitted, which included an admission that Appellees did not receive timely notice of a title defect. *Id.* at ¶ 81.

{¶17} Appellees appealed to the Ohio Supreme Court, but the Court declined review. 159 Ohio St.3d 1407, 2020-Ohio-3174, 146 N.E.3d 586 (Table).

## POST-*TORONTO I* PROCEEDINGS

{¶18} On July 9, 2020, Appellant filed a motion for leave to amend its affirmative defenses, including adding the defense of accord and satisfaction. The trial court denied the motion, explaining that this Court upheld its prior denial of this request based on untimeliness and undue delay.

{¶19} On September 21, 2020, Appellant filed a motion for partial summary judgment. Appellant asserted that Appellees could not establish claims for breach of the leases because they could not sustain the damages element of their claims. Appellant contended that while title defects could be cured, the defects identified in its summary judgment motion were not cured and no attempts were ever made to cure them.

{¶20} Appellant explained that the title defects fell into four categories: (1) those who had no record title of any interest in the property by Appellees; (2) evidence of active prior oil and gas leases by another lessee in the property; (3) a prior reservation in the oil and gas in the chain of title which severed it from the surface; and (4) claims of title to minerals through the automatic vesting under the 1989 version of the Ohio Dormant Mineral Act (DMA). Appellant provided an explanation of each category and a breakdown as to each Appellee, their property, and which category they fell into with regard to title defect.

{¶21} On May 28, 2021, Appellees filed a motion for partial summary judgment. They contended that contrary to our holding in *Toronto 1*, Appellant was attempting to persuade the trial court to hold that any alleged defect in their titles to any parcel precluded recovery. Appellees asserted that there were four categories of plaintiffs, but only three were ripe for summary judgment.

{¶22} Appellees stated that those in the first group who possessed good title and received no notice of title defect from Appellant should be paid. Appellees contended

that the second group should also be paid as they possessed good title at the time of Appellant's breach and cured the title defects after Appellant provided notice of defect. Appellees contended that Appellant should also pay the third group as they were not provided notice of a title defect, Appellant now alleged a defective title, and Appellant wrongfully prevented them from curing title at the proper time. Appellees asserted that equity required Appellant to prove they would have been unable to cure, which Appellant could not do.

**{¶23}** As to the fourth group, Appellees asserted that they were plaintiffs to whom Appellant gave untimely notice of defect, but who may or may not have been able to cure as to all parcels. Appellees submitted that they were not requesting summary judgment as to these parties.

## TRIAL COURT'S DECEMBER 21, 2021 ORDER

**{¶24}** On December 21, 2021, the trial court granted in part and denied in part Appellant's motion for partial summary judgment. Appellant appeals only the denial of the motion and the remaining Appellees do not appeal the granting of summary judgment in favor of Appellant in this order. Thus, only the Appellees involved in the part of this order that Appellant appeals will be discussed.

**{¶25}** In denying the motion in part, the court noted that we had affirmed its prior ruling that GRE acted as Appellant's agent. The court further noted that as part of its duties to Appellant, GRE prepared Mineral Ownership Reports (MORS), some of which indicated that named Appellees had good title and GRE recommended payment. The court held that these MORS were admissions by a party opponent under Evid.R. 801(D)(2)(d).

**{¶26}** The trial court also found that Appellees relied upon the prevention of performance doctrine, which we previously recognized in *Allied Erecting & Dismantling Co., Inc. v. Anderson Equip. Co.*, 7th Dist. Mahoning No. 99 CA 79, 2000-Ohio-2563,*2. The trial court quoted our holding that:

> [a]n implied term of any contract is that one party will not, in bad faith, prevent the performance by the other party. *Werner v. Biederman* (1940), 64 Ohio App. 423, 428. This Court has held that, "a party who prevents

performance on his own part or on the part of the adverse party cannot take advantage of such noncompliance or nonperformance by the party obligated to perform under the contract." *Gary Crim, Inc. v. Rios* (1996), 114 Ohio App.3d 433, 436.

(Dec. 21, 2021 Order at 8-9, quoting *Allied Erecting, supra,* at *2).

**{¶27}** The trial court found that real estate contracts routinely contain a condition precedent about curing title defects by the seller. (Dec. 21, 2021 Order at 9). The court cited caselaw providing that a condition precedent is excused when a party materially contributes to the failure of the condition precedent and then tries to avoid its obligation because of that failure. (Dec. 21, 2021 Order at 9). The court quoted the Restatement (Second) of Contracts § 245 (1981), comment b:

"if it can be shown that the condition would not have occurred regardless of the lack of cooperation, the failure of performance did not contribute materially to its non-occurrence and the rule does not apply. However, the burden of showing this is properly thrown on the party in breach."

(Dec. 21, 2021 at 10).

**{¶28}** The trial court first held that Appellant was entitled to summary judgment as to some of the acreage as to certain Appellees, which is not appealed by Appellees here. Those are: Toronto City Schools, 1.51 acres; Martin Group, 88.843 acres; Richard and Dolores Hazelip, 174 acres; and Harry Kellermier, 30.09 acres, 64.25 acres, 21.13 acres, and 21.63 acres.

**{¶29}** As to the remaining Appellees, the trial court applied the prevention of performance doctrine. The court held that Appellant was required to first provide notice of defect to Appellees and Appellees were then required to correct the defect within 90 days as a condition precedent to receiving payment from Appellant. The court held that since Appellant materially contributed to the failure of the condition precedent, some Appellees were denied proper notice from Appellant and thus were denied the ability to cure. (Dec. 21, 2021 at 14-16). The court therefore denied summary judgment to Appellant as to Robert and Rebecca Brock, 1.6 acres; Robert and Kimberly Cherepko, 14.37714 acres; the Fray Family, 94.13 acres; Patrick and Joelle Moran, 18 acres; Harry

Kellermier, 160 acres, 174.88 acres, 2 acres, and 0.6 acres; Eugene Ondusko, 22.326 acres, Toronto City Schools, 20.508 acres, the Martin Group, 21.407 acres, and Richard and Dolores Hazelip, 16.79 acres. The trial court held that Appellant bore the burden of proving that "any alleged title defects were irremediable and could not have been cured if proper notice had been given." (Dec. 21, 2021 at 10).

## JANUARY 21, 2022 TRIAL COURT JUDGMENT

**{¶30}** On January 21, 2022, the trial court issued an order on Appellees' motion for partial summary judgment. The court indicated that oral argument was held on the motion on September 28, 2021. No transcript was ordered of this hearing. The court applied the same law it applied in its December 21, 2021 order as to prevention of performance and detailed findings ordering full bonus payments to the remaining Appellees.

**{¶31}** The court found that no legitimate dispute existed and Appellant, through GRE and its MORS, admitted that the Martin Group and Toronto City Schools had good title. It granted summary judgment in favor of these Appellees.

**{¶32}** The court also granted summary judgment to the 160-acre parcel of Harry Kellermier, finding that GRE admitted that he had good title in the MOR and therefore no notice of defect was given to Mr. Kellermier concerning this parcel.

**{¶33}** Concerning James and Lieba Duffin, Jeffrey and Beverly Duffin, and Judith Ann Duffin-Ramirez, the court held that they obtained their interest via a May 21, 2010 deed which was recorded, and Appellant provided them no evidence of title defect and failed to tender the agreed-upon bonus payments.

**{¶34}** Regarding Eugene Ondusko, the court found that Appellant never provided a notice of defect of title and GRE's MOR stated there was no title defect and recommended payment. The court held that although there was a defect in title, Mr. Ondusko was denied the opportunity to cure that defect due to GRE's admission that no defect existed. The court granted summary judgment in his favor in the full amount of the bonus payments, plus interest.

{¶35} As to Harry Kellermier and his 174.88 acre and 2.6-acre parcels, the court held that Appellant provided him no notice of title defect and he was therefore denied the opportunity to cure any defect that Appellant claimed at the time.

{¶36} The court found the same as to Patrick and Joelle Moran's parcels, which were divided into three separate 6-acre parcels. The court held that although Appellant listed "mortgage defect" in a spreadsheet listing that named a number of parcels, no evidence was produced showing that a mortgage defect existed.

{¶37} The trial court also held that insufficient notice of a title defect was provided by Appellant's agent, who emailed the Fray Family's attorney and told him to contact another of Appellant's agents for specific information as to the title defect claimed as to their property.

{¶38} As to Robert and Rebecca Brock, the court held that they had an unsubordinated mortgage, which was identified in the OOP as constituting "a title defect and is a basis to render title unacceptable." (Jan. 21, 2022 at 14). However, the court held that while this was a basis to render title unacceptable, the language of the OOP did not necessarily render it unacceptable to Appellant. The court found that Appellant provided insufficient notice to the Brocks that the defect was unacceptable to it. The court further found that a letter Appellant sent to the Brocks' counsel from a GRE agent was insufficient notice because no record evidence showed that the Brocks or their counsel received the letter. The court held that the Brocks were thus denied the opportunity to cure any defect.

{¶39} The trial court further found that Appellant also prevented the Cherepkos from curing any defect in title to their 13.377 acres because the notice that Appellant provided was in the form of a spreadsheet update given to their counsel which set forth a "notification of title defects," but did not identify those defects. The court held that this would have required the Cherepkos to review their title and try to guess what Appellant deemed defective and then attempt to cure. The court found that this notice was insufficient and prevented the Cherepkos from curing the defect.

{¶40} On January 5, 2023, the trial court issued a Final Order indicating that all claims in the case had been adjudicated in its December 21, 2021 order and its January 21, 2022 order.

**{¶41}** Appellant filed a timely notice of appeal asserting two assignments of error. Appellant addresses these assignments of error together:

1. **THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS DECEMBER 21, 2021 ORDER DENYING ASCENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CERTAIN PLAINTIFFS.**

2. **THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS JANUARY 21, 2022 ORDER GRANTING CERTAIN PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**.

**{¶42}** Appellant first asserts that the trial court violated the law-of-the-case doctrine by failing to follow our remand instructions from *Toronto 1*, 2020-Ohio-586, 152 N.E.3d 378 (7th Dist.). Appellant contends that the trial court again awarded Appellees full signing bonus payments in the amount of $3,836,399.41 plus interest, without requiring that they show actual damages. Appellant submits that this contravenes our remand order holding that Appellees must show damages for breach of the title review process.

**{¶43}** Appellant also contends that the trial court improperly shifted the burden to Appellant to prove that any title defects alleged by Appellees were irremediable and could not have been cured if it had given proper notice. Appellant argues that this also contravened our remand order because we did not shift the burden and we provided examples of ways in which Appellees could prove damages. Appellant quotes to our decision stating that:

> [i]n fact, landowner's lack of record ownership of minerals (including due to an existing lease) may be cured. For instance, a landowner could: obtain a release of the old lease for undisputed lack of production; seek a quitclaim from a person (such as from a relative who agrees you have title to the minerals or from a person who admits Marketable Title Act extinguishment of their mineral interest); serve a Dormant Mineral Act notice and hope the mineral holder does not respond; record a deed that was executed but

never recorded; or have a deed executed under a prior contract (such as in our *Shrock* case where the plaintiff had equitable title from a land purchase but not legal title). *See Shrock v. Mullet*, 7th Dist. Jefferson No. 18 JE 0018, 2019-Ohio-2707. Therefore, an analysis and application of the title review clauses and the contractual opportunity to cure title defects is warranted.

(Appellant's Br. at 12, quoting *Toronto I,* 2020-Ohio-586, 152 N.E.3d 378, ¶ 53 (7th Dist.)).

## LAW-OF-THE-CASE DOCTRINE

**{¶44}** Appellant asserts that the law of the case in *Toronto 1, supra,* is:

1. There was a breach of the defect notice provision of the OOP as to those Plaintiffs who did not receive notice of a defect or where the notice was late;

2. The damages resulting from that breach were not however, automatic; and

3. To recover for breach of the OOP, the Plaintiffs had to prove actual damages.

(Appellant's Br. at 14, citing *Toronto 1, supra*, at ¶ 14).

**{¶45}** Appellant cites *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410, 412 (1984), for support that the law-of-the-case doctrine applies to decisions of a reviewing court to subsequent proceedings in the case at the trial court and the appellate levels. Appellant quotes part of *Nolan* holding that "where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal the court is bound to adhere to the appellate court's determination of the applicable law." *Id.*

**{¶46}** Appellant cites our holding in *Manshadi v. Bleggi*, 7th Dist. Mahoning No. 20 MA 0066, 2021-Ohio-3593, ¶ 12. There, we reversed and remanded the trial court's decision granting a motion to dismiss the plaintiff's conversion claim. *Id.* We explained that numerous questions of fact remained on the claim so that dismissal was improper. *Id.* On remand, the trial court dismissed the conversion claim even though no new

evidence was presented. *Id.* We found that the court violated the law-of-the-case doctrine by dismissing the conversion claim on remand without new evidence. *Id.* We held that:

> [o]n remand, no proceedings in aid of resolution were held nor did either party introduce any additional evidence into the record, meaning the trial court was confronted with the same facts and issues with which it was confronted prior to appeal. Hence, the issues are identical to those presented to us in the first appeal where we held the conversion claim could not be dismissed through summary judgment. Since the matter had once been determined in summary judgment and we reversed, finding that questions of fact remained did not allow determination of the issue as a matter of law, it is axiomatic that the matter could not be dismissed for failing to state a claim pursuant to Civ. R. 12(B)(6).

*Id.* at ¶ 14.

**{¶47}** Appellant submits that it included evidence in its motion for summary judgment that Appellees' land titles were defective due to: (1) Appellees having no record title of an interest in the oil and gas estate; (2) a prior mineral reservation deprived Appellees of an interest in the oil and gas estate; (3) a prior, active oil and gas lease encumbered the oil and gas estate; or (4) a mortgage defect existed. Appellant asserts that Appellees offered no evidence demonstrating the existence of a genuine issue of material fact as to whether the title defects alleged were valid, had been cured, or could have been cured. Appellant contends that Appellees instead argued that the lack of notice of a defect entitled them to the entire signing bonuses because of a lost opportunity to cure based upon prevention of performance which shifted the burden of proving damages to Appellant.

**{¶48}** Appellant also asserts that Appellees submitted no evidence in their motion for partial summary judgment establishing that they cured or could have cured title defects and suffered damages as they relied only on the prevention of performance doctrine.

**{¶49}** Appellant contends that the trial court ignored the law of the case, improperly applied the prevention of performance doctrine, and shifted the burden to Appellant to prove a lack of damages.  Appellant summarizes:

[t]he first time through, the trial court presumed damages in the absence of proof, and this court reversed and remanded.  The second time through, the trial court presumed damages in the absence of disproof.

(Appellant's Br. at 16).

**{¶50}** Appellees respond that the law-of-the-case doctrine does not apply because the trial court considered a different evidentiary record and legal issues than those presented in *Toronto 1*.  Appellees cite our decision in *Creaturo v. Duko*, 7th Dist. Columbiana No. 04 CO 1, 2005-Ohio-1342, ¶ 24 in support.  There, we held that the law-of-the-case doctrine did not apply to bar one defendant from asserting a statute of limitations defense in a summary judgment motion when the co-defendant had included the statute of limitations bar in its motion to dismiss.  *Id*. at ¶ 24-26.  We explained that a motion to dismiss involved different issues than a summary judgment motion and a motion to dismiss was an interlocutory order that could be reconsidered at any time*.  Id*.

**{¶51}**  Appellees also rely on cases holding that the law-of-the-case doctrine is not violated when a court considers a summary judgment motion for a second time based on an expanded record.  *Johnson v. Morris*, 108 Ohio App.3d 343, 349, 670 N.E. 1023 (4th Dist. 1995), citing *Stemen v. Shibley*, 11 Ohio App.3d 263, 266, 465 N.E.2d 460 (6th Dist. 1982).

**{¶52}** Appellees cite the trial court's judgment on remand as evidence of a different evidentiary record and legal principles.  They explain that the trial court in *Toronto 1* entered judgment in favor of every landowner and awarded over $12 million to the landowners.  Appellees point out that the trial court judgment was for $5 million on remand.  They also cite the trial court's consideration of affidavits, OOPs, particular landowner deeds, attempts to cure, timelines for doing so, more recently decided Ohio Supreme Court caselaw, and documentation within each landowner's chain of title.

**{¶53}** Appellees further contend that even if the law-of-the-case doctrine applied, the trial court "meticulously" followed our remand instructions.  They assert that in *Toronto*

*1,* we simply disagreed with the trial court's finding that they were automatically entitled to the full signing bonus for breach of the lease. Appellees assert that we remanded the case for them to show damages resulting from the breach, but we did not restrict them to a particular method of showing damages or bar them from asserting any applicable legal or equitable principles.

**{¶54}** Appellees also cite two of our statements in *Toronto 1* for confirmation that those Appellees who lost an opportunity to cure sustained damages. Our first statement was that, "mere lack of title ownership may not preclude recovery (due to possible lost opportunity to cure)." *Toronto 1, supra,* at ¶ 64. The second statement was that "[w]e cannot presume a lack of ownership or inability to cure." *Id.*

**{¶55}** We find that the law-of-the-case doctrine applies to the instant case. The law-of-the-case doctrine states that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). Although not a rule of law, it is necessary "to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 15 citing *State ex rel. Potain v. Mathews*, 59 Ohio St.2d 29, 32, 391 N.E.2d 343 (1979).

**{¶56}** In *Toronto 1*, we held that Appellant was bound by the actions of GRE through agency law. *Toronto 1*, 2020-Ohio-586, 152 N.E.3d 378 at ¶ 37. We also held that the contractual language in the OOP anticipated that failure of consideration could excuse performance, but it did not express a right to future and full payment after a failure in consideration and/or provide punishment for the failure to meet a deadline. *Id.* at ¶ 62. We further held that automatic entitlement to the full signing bonus in the OOP was not the contractual remedy for untimely notice of a title defect. *Id.* We remanded "for further proceedings where a showing of damages would be required for each landowner." *Id.* Finally, we upheld the trial court's determination that discovery admissions by GRE that Appellees did not receive timely notice of a title defect were deemed admitted when Appellant failed to satisfy the discovery rule in its response to the admission. *Id.* at ¶ 81.

**{¶57}** In remanding the case, we found that the trial court awarded Appellees damages without requiring them to show that they were able to lease the minerals that they purported to lease or to show they were damaged by the breach. *Id.* at ¶ 64. We held that the recoverable signing bonus must be proportional to the actual ownership or ability to cure. *Id.* at ¶ 64. We found that we could not presume lack of ownership or inability to cure as the case never reached the evidentiary stage where these issues became ripe, such as ownership, title defect, complete or partial curing, ability to cure, or the extent of actual damages. *Id.* at ¶ 64. We noted that we were not ruling that lack of title ownership precluded recovery because an argument could be made concerning the lost opportunity to cure. *Id.* at ¶ 64, fn.7. However, our remand order was not followed which required Appellees to show damages.

**{¶58}** The United States Supreme Court has explained, "[t]he doctrine of law of the case comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 347, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), fn. 18. Thus, "[o]nly those legal questions resolved by a reviewing court are the law of that case." *Nolan*, 11 Ohio St.3d at 3, 462 N.E.2d 410. A lower court is free to determine issues other than those remanded upon mandate from this Court. *Quern, supra,* quoting *Sprague v. Ticonic Natl. Bank,* 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed.1184 (1939).

**{¶59}** We conclusively decided the issues above in *Toronto 1.* Allowing the trial court to determine those issues again would result in inconsistency in the case, create ongoing litigation, and impact the structure of the appellate and trial courts. Thus, we hold that the law of the case applies to those issues determined in *Toronto 1.*

### PREVENTION OF PERFORMANCE AND SHIFTING OF BURDEN

**{¶60}** Even if the law of the case did not apply, the trial court failed to comply with our remand order. Rather than requiring Appellees to establish damages resulting from any breach of the title review process, the court shifted the burden to Appellant to prove that Appellees could not have cured title defects if they were provided notices of defects and placed the burden on Appellant to show that Appellees did not suffer damages.

**{¶61}** Appellant challenges the trial court's determinations concerning the following three groups of Appellees as identified by the court:

A. Those who received no notice of title defect by Appellant;

B. Those who Appellant admitted had good title by failing to properly respond to discovery admissions where GRE admitted in MORS that these Appellees had good title;

C. Those who allegedly lost the opportunity to cure a defective title because they received no notice of defect or improper notice of defect.

{¶62} Of the remaining Appellees, Group A includes 5 acres owned by Harry Kellermier, for which the trial court granted him $32,500 plus interest from February 24, 2014. Appellant concedes in its appellate brief that it never identified a title defect and it is not appealing this portion of the trial court's January 21, 2022 determination. (Br. at 15, fn.13). Appellant also conceded to payment at oral argument.

{¶63} Accordingly, this Court affirms the trial court's judgment in the amount of $32,500 plus interest from February 24, 2014 to Harry Kellermier on the 5 acres outlined in the trial court determination.

{¶64} Group B identified by the trial court in its January 21, 2022 judgment entry includes:

1. James and Lieba Duffin, Jeff and Beverly Duffin, Judith Ann Duffin-Ramirez, 12.66 acres each;

2. Harry Kellermier and the 160-acre parcel,

3. Toronto Schools and the 20.58-acre parcel,

4. The Martin Group's 21.407-acre parcel,

5. Richard and Delores Hazelip's 16.79-acre parcel; and

6. Eugene Ondusko and the 22.33-acre parcel.

{¶65} The court properly referred to our holding in *Toronto 1*, *supra,* that GRE was Appellant's agent. The trial court held that because GRE was Appellant's agent, the

MORS that GRE generated for Appellant were admissions by a party opponent under Evid.R. 801(D)(2)(d). The court held that GRE's MORS in 2013 and 2014 stated that a number of Appellees had good title and therefore no notices of defects were sent to Appellees.

{¶66} The court ruled that these Appellees could not reach back 7 or 8 years to 2013 or 2014 to establish the ability to cure defects for which Appellant never provided them notice. The court noted that banks holding mortgages have been absorbed by other banks, neighbors or others with possible claims to parcels have died or moved, and oil and gas companies to which they could have leased have come and gone. The court held that since Appellant did not diligently conduct title searches within the 120-days of the OOP to provide Appellees with a timely notice of defect, it was impossible for Appellees to cure within the stated 90 days in the OOP.

{¶67} To the extent that the court applied Evid.R. 801(d)(2) to shift the burden of proving damages to Appellant, the court has erred. As Appellant asserts, this Rule is an evidence rule providing an exception to the hearsay rule if an opposing party makes an admission. The Rule provides that such admissions are admissible evidence at trial even though they are hearsay, which is usually excluded from trial. It is uncertain from the judgment entry if the trial court relied on this Rule to award full bonus payments to Group B, or if the Rule was used in conjunction with prevention of performance. Thus, to the extent that the trial court used Evid.R. 801(d)(2) to shift the burden to Appellant and awarded damages for Appellees bonus payments, we find that the court has misapplied the Rule.

{¶68} The court applied the prevention of performance doctrine and held that Appellant shouldered the burden to provide that "any alleged title defects were irremediable and could not have been cured had proper notice been provided." (Jan. 21, 2022 J.E. at 9). The court reasoned that the condition precedent to Appellees receiving full bonus payments was that they had to cure any title defects within 90 days of Appellant providing them with notice of a title defect.

{¶69} As to the Group C Appellees, the trial court held that these included:

1.  Harry Kellermier and his 174.88 and 2.6-acre parcels;

2. Patrick and Joelle Moran and their 18-acre parce;

3. Robert and Rebekah Brock and their 1.6-acre parcel;

4. Robert and Kimberly Cherepko and their 14.377-acre parcel; and

5. The Fray Family's 94.13-acre parcel.

(Jan. 21, 2022 J.E. at 12).

{¶70} Again, like Group B, the court applied prevention of performance and held that Appellant shouldered the burden of proving that the defects in Appellees' titles were unable to be remedied or could not be cured if proper notice had been given. By doing so, the court has incorrectly applied the prevention of performance doctrine.

{¶71} The trial court correctly stated the law on prevention of performance and conditions precedent. "The prevention of performance doctrine provides that a party who prevents another from performing its contractual obligations cannot rely on that failure of performance to assert breach of contract." *Lucarell v. Nationwide Mut. Ins. Co.,* 152 Ohio St.3d 453, 2018-Ohio-15, ¶ 54, citing *Suter v. Farmers' Fertilizer Co.,* 100 Ohio St. 403, 126 N.E. 304 (1919), paragraph four of the syllabus; *Buckley Towers Condominium, Inc. v. QBE Ins. Corp.*, 395 Fed.Appx. 659, 662 (11th Cir.2010); 13 Lord, Section 39:3, at 569–571.

{¶72} However, prevention of performance is usually used as a defense to a claim for breach of contract. *Meyer Tool, Inc. v. Mikrolar, Inc.*, 2023-Ohio-704, 210 N.E.3d 602, ¶ 15 (1st Dist.). Here, the trial court applied this doctrine as a defense for Appellees to excuse their duty to cure defective title or prove damages.

{¶73} The court also relied on the notice of defect to be a condition precedent to Appellees' ability to cure title and demonstrate damages. The Supreme Court of Ohio has defined a "condition precedent" as "one that is to be performed before the agreement becomes effective, and which calls for the happening of some event or the performance of some act after the terms of the contract have been agreed on, before the contract shall be binding on the parties." *Mumaw v. W. & S. Life Ins. Co.*, 97 Ohio St. 1, 119 N.E. 132 (1917), syllabus.

Case No. 23 JE 0002

**{¶74}** However, neither of these doctrines transfer the burden of proving damages to a defendant in a plaintiff's breach of contract action. "To prevail in a breach of contract case, the plaintiff must prove the existence of a contract, the plaintiff's performance under the contract, the defendant's breach, and damages." *R.T. Builders, Inc. v. Granger*, 7th Dist. Mahoning No. 04-MA-147, 2005-Ohio-6043, ¶ 16, citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist. 1994).

**{¶75}** As we stated in *Toronto 1*, "[t]he contractual language in its entirety anticipates that the failure of consideration can excuse performance; the language does not express a right to future and full payment after a failure in consideration and/or provide punishment for the failure to meet a deadline." *Toronto 1, supra*, at ¶ 62. We interpreted the OOP language and held that while it provided a preliminary step by setting forth the process of title review, it warned that payment was conditioned on GRE confirming good title. We held that the OOP did "not say the lessee waives its right to decrease the signing bonus after 120 days pass without notice of a title defect." *Id.* at ¶ 61. We stated that Appellees were not prevented from demonstrating actual damages for breach of the title review clause. *Id.* at ¶ 62.

**{¶76}** Accordingly, Appellant's two assignments of error are sustained. The trial court's judgment in the amount of $32,500 plus interest from February 24, 2014 to Harry Kellermier on the 5 acres outlined in the trial court determination is affirmed. The judgment is reversed in all other respects and this matter is remanded for proceedings consistent with this Opinion. On remand, Appellees shall demonstrate that any failure of notice of title defect by Appellant caused them to sustain harm and to identify the harm and amount of damages that they claim.

Waite, J., concurs.

Robb, P.J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed as to the judgment in the amount of $32,500 plus interest from February 24, 2014 to Harry Kellermier on the 5 acres outlined in the trial court determination. The judgment is reversed in all other respects and this matter is remanded for further proceedings according to law and consistent with this Court's Opinion. On remand, Appellees shall demonstrate that any failure of notice of title defect by Appellant caused them to sustain harm and to identify the harm and amount of damages that they claim. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**